# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 15-2901

———————————————

Neil Stokes; Craig Felzien

*Plaintiffs - Appellees*

v.

DISH Network, L.L.C.

*Defendant - Appellant*

————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

————————

Submitted: April 14, 2016
Filed: October 4, 2016

————————

Before LOKEN, BEAM, and SMITH, Circuit Judges.

————————

LOKEN, Circuit Judge.

DISH Network, L.L.C. ("DISH"), is a Colorado corporation that sells satellite television access packages nationwide. DISH's "carriage" agreement with Turner Network Sales, Inc., expired on October 21, 2014, and was not renewed until November 20, 2014. DISH's carriage agreement with FOX News Network L.L.C. expired on December 21, 2014, and was not renewed until January 15, 2015. DISH subscribers who had selected programming packages that included popular Turner

and FOX News channels did not have access to those channels during these interruptions. Though DISH continued to provide hundreds of other channels, it did not provide complaining subscribers any form of monetary relief for the Turner and FOX News interruptions.

Neil Stokes and Craig Felzien, DISH subscribers since 2008 and 2000, respectively, commenced this action on behalf of themselves and a putative nationwide class of DISH subscribers (collectively, "Plaintiffs") seeking monetary relief for the Turner and FOX News services interruptions. Applying Colorado law, as the DISH Subscription Agreements expressly provide, the district court denied DISH's motion to dismiss Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing. The court certified two questions for immediate interlocutory appeal under 28 U.S.C. § 1292(b).[1] We granted a timely request to appeal the certified questions and now review *de novo* the district court's interpretation of the Subscription Agreements under Colorado law, Matrix Grp. Ltd. v. Rawlings Sporting Goods Co., 477 F.3d 583, 590 (8th Cir. 2007), and the court's denial of DISH's motion to dismiss these claims for failure to state a claim upon which relief can be granted, Prescott v. Little Six, Inc., 387 F.3d 753, 756 (8th Cir. 2004), cert. denied, 544 U.S. 1032 (2005). We answer each certified question in the negative, reverse the district court's order denying DISH's motion to dismiss, and remand for further proceedings not inconsistent with this opinion.

## I. Relevant Contract Terms.

Plaintiffs subscribed to specific DISH access packages, paying in advance. They received Subscription Agreements after DISH installed satellite equipment in

---

[1]Pending this appeal, the district court stayed this case and a case presenting similar issues, Padberg v. DISH Network LLC, 11-04035-CV, 2012 WL 2120765 (W.D. Mo. June 11, 2012).

their homes, comprised of a Digital Home Advantage Plan Agreement ("Plan Agreement") and a Residential Customer Agreement ("RCA"). The certified questions on appeal turn on the following contract provisions. The Plan Agreement provides in relevant part:

> BY SIGNING BELOW YOU ACKNOWLEDGE AND AGREE THAT YOU HAVE RECEIVED, READ, UNDERSTAND, AND AGREE TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING . . . THE RESIDENTIAL CUSTOMER AGREEMENT . . . AND THAT THE FOLLOWING TERMS WERE DISCLOSED TO YOU PRIOR TO LEASE:
> . . .
> **WE RESERVE THE RIGHT TO CHANGE PRICES, PACKAGES, AND PROGRAMMING AT ANY TIME, INCLUDING WITHOUT LIMITATION, DURING ANY TERM AGREEMENT PERIOD TO WHICH YOU HAVE AGREED.**

The RCA provides in relevant part:

> **1. THE DISH NETWORK SERVICE**
>
> . . .
> I. <u>Changes in Services Offered</u>. We may add, delete, rearrange and/or change any and all programming, programming packages and other Services that we offer, as well as the prices and fees related to such programming, programming packages and Services, at any time, including . . . during any term commitment period to which you have agreed. If a change affects you, we will notify you of such change and its effective date. In the event that we delete, rearrange or change any programming, programming packages or other Services, we have no obligation to replace or supplement such programming, programming packages or other Services. You are not entitled to any refund because of deletion, rearrangement or change of any programming, programming packages or other Services.

**7. LIMITATION OF OUR LIABILITY**

A. <u>INTERRUPTIONS AND DELAYS</u>. NEITHER WE NOR OUR THIRD-PARTY BILLING AGENTS . . . WILL BE LIABLE FOR ANY INTERRUPTION IN ANY SERVICE OR FOR ANY DELAY OR FAILURE TO PERFORM, INCLUDING WITHOUT LIMITATION: IF SUCH INTERRUPTION, DELAY OR FAILURE TO PERFORM ARISES IN CONNECTION WITH THE TERMINATION OR SUSPENSION OF DISH NETWORK'S ACCESS TO ALL OR ANY PORTION OF SERVICES; THE RELOCATION OF ALL OR ANY PORTION OF THE SERVICES TO DIFFERENT SATELLITE(S); A CHANGE IN THE FEATURES AVAILABLE WITH YOUR EQUIPMENT; ANY SOFTWARE OR OTHER DOWNLOADS INITIATED BY US; OR ANY ACTS OF GOD, FIRES, EARTHQUAKES, FLOODS, POWER OR TECHNICAL FAILURE, SATELLITE OR UPLINK FAILURE, ACTS OF ANY GOVERNMENTAL BODY OR ANY OTHER CAUSE BEYOND OUR REASONABLE CONTROL.

## II. The First Certified Question.

**1. Under Colorado law, is the Subscription Agreement between Stokes and DISH, which is comprised of both a Digital Home Advantage Plan Agreement and a Residential Customer Agreement, illusory?**

In our view, this issue is a classic red herring.[2] The phrase "illusory promise" means "words in promissory form that promise nothing." 2 Corbin on Contracts § 5.28, at 142 (rev. ed. 1995). In most cases, the purported contract fails for lack of consideration because, "[w]here the apparent assurance of performance is illusory, it is not consideration for a return promise." Restatement (Second) of Contracts § 77

---

[2]Defined in Webster's Third New International Dictionary as "a diversion intended to distract attention from the real issue."

cmt. a. For example, in <u>Bernhardt v. Hemphill</u>, 878 P.2d 107, 111 (Colo. App. 1994), plaintiffs entered into time-share contracts with a motel they owned and operated; the court concluded that "the contracts were wholly illusory" because "no rights were created that the plaintiffs did not already possess."

In this case, the district court concluded that, if the Subscription Agreements provided "that DISH cannot be held liable for any interruption or delay of any or all programs for any period of time . . . such an interpretation would of course render the contract illusory." We disagree. An illusory contract is unenforceable from its inception. Here, the Subscription Agreement between Stokes and DISH had been in effect for years when the Turner and FOX News service interruptions occurred. Both parties had provided substantial performance of their respective contractual promises, and DISH continued to provide many uninterrupted channels to its subscribers. Under Colorado law, a contract is not illusory for lack of consideration where a party with seemingly unlimited discretion in performing has at least partially performed and thereby "incurred a sufficient detriment to provide consideration." <u>O'Hara Grp. Denver, Ltd. v. Marcor Housing Sys., Inc.</u>, 595 P.2d 679, 683-84 (Colo. 1979); <u>see United Press Int'l, Inc. v. Sentinel Publ'g Co.</u>, 441 P.2d 316, 318-19 (Colo. 1968). The answer to the first certified question is no.

### III. The Second Certified Question.

**2. Under Colorado Law, if the Subscription Agreement between Stokes and DISH, which is comprised of both a Digital Home Advantage Plan Agreement and a Residential Customer Agreement, is not illusory, may, in light of the express terms of the Subscription Agreement, the duty of good faith and fair dealing be applied to require DISH to provide any monetary relief when it deletes or changes programming for which subscribers have already paid?**

Under Colorado law, all contracts are subject to an implied duty of good faith and fair dealing, as DISH concedes on appeal. The Plan Agreement, and Section 1.I. of the RCA, entitled "Changes in Services Offered," granted DISH discretion to change "programming, programming packages and other Services that we offer, as well as the prices and fees related to such . . . Services, at any time." Under Colorado law (as elsewhere), the "implied duty of good faith and fair dealing 'requires that a party vested with contractual discretion exercise that discretion reasonably.'" Bloom v. Nat'l Collegiate Ass'n, 93 P.3d 621, 624 (Colo. App. 2004). As the Colorado Supreme Court has explained:

> The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations. Good faith performance of a contract involves faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . . [A]dherence to this principle promotes the central policy underlying contract law, that of construing contracts so as to effectuate the parties' intentions.

> The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party. However, it will not contradict terms or conditions for which a party has bargained.

Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995) (quotations omitted).

The duty of good faith and fair dealing "will not contradict terms or conditions for which a party has bargained." Id. The duty "does not obligate a party . . . to assume obligations that vary or contradict the contract's express provisions, nor does it permit a party to inject substantive terms into the contract." ADT Sec. Servs., Inc. v. Premier Home Prot., Inc., 181 P.3d 288, 293 (Colo. App. 2007). Rather, "the

doctrine of good faith performance is a means of finding within a contract an implied obligation not to engage in the particular form of conduct which, in the case at hand, constitutes 'bad faith.'" Tymshare, Inc. v. Covell, 727 F.2d 1145, 1152 (D.C. Cir. 1984). The covenant is not about establishing new, independent rights or duties; it is about "securing to the parties the sort of good faith performance that . . . they reasonably thought they were securing at the time they entered the bargain." Flood v. Clearone Commc'ns, Inc., 618 F.3d 1110, 1122 (10th Cir. 2010); see Tymshare, 727 F.2d at 1153-54.

Count II of Plaintiffs' First Amended Complaint pleaded a claim for breach of the covenant of good faith and fair dealing. But Plaintiffs did not allege that DISH interrupted their access to Turner and FOX News channels in bad faith. They instead alleged that DISH breached its duty of good faith and fair dealing "by unfairly charging and collecting monies . . . for satellite television programming that DISH did not provide . . . without providing a credit or other monetary relief . . . for the failure to provide the programming." Consistent with the contractual claims as pleaded, the district court in denying DISH's motion to dismiss concluded that "[t]he operative question is whether it was reasonable for DISH to stop providing Turner and FOX News Programming, keep the payments it would have been paying previously to the providers for those channels, and provide no recompense to its customers."

DISH argues that the covenant of good faith and fair dealing, while applicable to its Subscription Agreement, cannot support Plaintiffs' claim for monetary relief for the two programming interruptions, because the Subscription Agreement expressly provides that customers are not entitled to monetary relief for interruptions and performance delays resulting from the loss of DISH's access to the programming services it provides. We agree, and therefore answer this second question in the negative. The covenant "will not contradict terms or conditions for which a party has bargained." Amoco, 908 P.2d at 498. Therefore, DISH's duty to exercise its discretion to change programming in good faith cannot be the legal basis for a claim

to monetary relief that is precluded by unambiguous terms of the Subscription Agreement. In applying the covenant to specific contractual relationships, courts must "take care to ensure that we don't use the covenant as another means for substituting a different deal from the one the parties contemplated." Flood, 618 F.3d at 1121. The Supreme Court of Colorado has repeatedly recognized this principle. "It is axiomatic that in construing a document courts should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms." USI Props. E., Inc. v. Simpson, 938 P.2d 168, 173 (Colo. 1997).

Section 1.I. of the RCA provides that subscribers "are not entitled to any refund because of a deletion . . . or change of any programming, programming packages or other Services." Section 7.A. unequivocally provides that DISH "will [not] be liable for any interruption in any service or for any delay or failure to perform . . . without limitation." The district court cited various textual reasons why it declined to construe these provisions in accordance with their plain meaning. First, the court limited Section 7.A. to interruptions, delays, and failures that are "beyond [DISH's] reasonable control." This interpretation ignored the use of semicolons in Section 7A, which serve to signify that modifying phrases in one clause do not apply to other clauses. See Greater E. Transp. LLC v. Waste Mgmt. of Conn., Inc., 211 F. Supp. 2d 499, 504 (S.D.N.Y. 2002). Giving effect to the provision's punctuation, the phrase "beyond our reasonable control" applies only to the final *force majeure* clause, which disclaims liability for "any acts of god, fires, earthquakes, floods, power or technical failure, satellite or uplink failure, acts of any governmental body or any other cause beyond our reasonable control." For service interruptions and delays that may occur for many other reasons, and may entail loss of service ranging from momentary to extensive, Section 7.A. precludes monetary liability "without limitation."

The district court further reasoned that, if Section 7.A. were to disclaim monetary liability for all failures to perform, consistent with its plain meaning, then Section 7.F. of the RCA would be meaningless surplusage. Section 7.F. provides:

> F. <u>DAMAGES LIMITATION</u>. NEITHER WE NOR OUR THIRD-PARTY BILLING AGENTS . . . SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO: DISH NETWORK EQUIPMENT OR ANY OTHER EQUIPMENT; OUR FURNISHING OR FAILURE TO FURNISH ANY SERVICES OR EQUIPMENT TO YOU; OR ANY FAULT, FAILURE, DEFICIENCY OR DEFECT IN SERVICES OR EQUIPMENT FURNISHED TO YOU.

This section disclaims liability for consequential damages arising out of equipment failures and service deficiencies, whereas Section 7.A. disclaims liability for an "interruption in any Service or for any delay or failure to perform" in connection with problems such as loss of access to programming, relocation of services to different satellites, and software downloads. The difference in the disclaimers is not surprising. For example, if a satellite dish becomes detached from a subscriber's home, falls, and damages the subscriber's property, Section 7.F. disclaims "any special, indirect, incidental or consequential damages" caused by "DISH Network's equipment" (*i.e.*, the satellite dish). Section 7.A. does not apply because it is limited to interruptions, delays, and failures to perform relating to "Services."[3] Thus, giving effect to Section 7.A.'s plain meaning does not render Section 7.F. meaningless.

---

[3]Section 1.A. of the RCA states: "<u>Services Defined</u>. 'Services' shall mean all video, audio, data, interactive and other programming services and all other services that are currently available from DISH Network (whether subscription, pay-per-view or otherwise) and that we may provide to customers in the future."

Section 1.I. of the RCA states that a subscriber is "not entitled to any refund because of a deletion, rearrangement or change of any programming, programming packages or other Services." The district court declined to interpret this provision in accordance with its plain meaning by drawing a distinction between a "refund" and a "credit." Noting that Section 3.D. of the RCA prohibits both credits and refunds, the court concluded that Section 1.I. allows for monetary relief in the form of a credit for service interruptions because Section 1.I. explicitly prohibits only refunds. We disagree. Section 3 of the RCA contains multiple provisions dealing with Cancellation of Service. Sections 3.A.-C. provide that a customer's subscription will continue until the customer cancels or DISH disconnects Services; that the customer may cancel at any time, but some plans include early termination or cancellation fees; and the circumstances that permit DISH to disconnect Services. Section 3.D. then provides that, if Services are cancelled or disconnected for any reason, "charges for Services, once charged to your account, are non-refundable, and no refunds or credits will be provided in connection with the cancellation of Services." The addition of a reference to "credits" in the context of Section 3 is understandable. It in no way suggests that the language in Section 1.I -- "You are not entitled to any refund" -- intended anything less than the total preclusion of *monetary* relief for Services interruptions, as the total disclaimer of liability in Section 7.A. confirms.

We conclude that the district court's interpretation of Section 1.I. and Section 7.A. of the RCA improperly converted the covenant of good faith and fair dealing into an additional contract term. It allowed Plaintiffs to recover monetary relief for Services interruptions, a remedy that is unambiguously precluded by the express terms of the parties' contractual bargain. Accordingly, the answer to the second certified question is no. As pleaded, Plaintiffs' claims for class-wide monetary relief

in this case and in the related case of <u>Padberg v. DISH Network LLC</u> failed to state a claim upon which relief can be granted.  Our jurisdiction over this interlocutory appeal extends no further.

The order of the district court dated July 15, 2015 is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

————————————————