# United States Court of Appeals for the Federal Circuit

---

**BGT HOLDINGS LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1084

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00178-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: December 23, 2020

---

MILTON C. JOHNS, Executive Law Partners, PLLC, Manassas, VA, argued for plaintiff-appellant.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge*, BRYSON and STOLL, *Circuit Judges.*

BRYSON, *Circuit Judge.*

BGT Holdings LLC appeals from a decision of the United States Court of Federal Claims ("the Claims Court") dismissing its claims arising from the U.S. Navy's withholding of certain government-furnished equipment under a fixed-price contract. The dismissal followed the court's ruling that BGT had contractually waived its claims of constructive change through ratification, official change through waiver, and breach for failure to award an equitable adjustment. The court also held that BGT insufficiently alleged a breach of the implied duty of good faith and fair dealing. We affirm the dismissal of the breach of good faith and fair dealing claim but vacate the court's dismissal of the remaining claims.

I

A

In 2014, BGT contracted with the Navy to construct and deliver a gas turbine generator. The Navy agreed to supply certain government-furnished equipment ("GFE") that BGT would use to construct the generator. Two of the GFE items identified in the contract—an exhaust collector and engine mounts—are relevant to this appeal because the Navy ultimately did not deliver those items to BGT. The withdrawal of those items and the Navy's failure to compensate BGT for that withdrawal are the source of the dispute in this case.

The contract incorporated various clauses from the Federal Acquisition Regulation ("FAR"). For convenience, we cite to the FAR when referencing those contract clauses. One such clause, the "government property" clause, provides as follows in relevant part:

(d) *Government-furnished property*.

(1) The Government shall deliver to the Contractor the Government-furnished property described in this contract. . . .

(2) The delivery and/or performance dates specified in this contract are based upon the expectation that the Government-furnished property will be suitable for contract performance and will be delivered to the Contractor by the dates stated in the contract.

(i) If the property is not delivered to the Contractor by the dates stated in the contract, the Contracting Officer shall, upon the Contractor's timely written request, consider an equitable adjustment to the contract.

. . .

(3)(i) The Contracting Officer may by written notice, at any time—

(A) Increase or decrease the amount of Government-furnished property under this contract;

. . .

(C) Withdraw authority to use property.

(ii) Upon completion of any action(s) under paragraph (d)(3)(i) of this clause, and the Contractor's timely written request, the Contracting Officer shall consider an equitable adjustment to the contract.

. . .

(i) *Equitable adjustment*. Equitable adjustments under this clause shall be made in accordance with the procedures of the Changes clause. However,

the Government shall not be liable for breach of contract for the following:

(1) Any delay in delivery of Government-furnished property.

(2) Delivery of Government-furnished property in a condition not suitable for its intended use.

(3) An increase, decrease, or substitution of Government-furnished property.

48 C.F.R. § 52.245-1.

To summarize, subsection (d)(1) of the government property clause requires the Navy to deliver the designated GFE; subsection (d)(2)(i) provides that the Navy "shall consider" an equitable adjustment if it does not deliver the designated GFE by the agreed-upon date; subsection (d)(3)(i) gives the Navy the right to modify its GFE commitments; and subsection (d)(3)(ii) provides that the Navy "shall consider" an equitable adjustment if it modifies those GFE commitments. Separately, subsection (i) requires that equitable adjustments be made according to the procedures in the contract's changes clause. Subsection (i) also provides that neither the Navy's modifications to its GFE commitments nor its untimely delivery of GFE will constitute a breach of the contract.

The contract incorporates the standard FAR changes clause for fixed-price contracts, 48 C.F.R. § 52.243-1. The fixed-price changes clause covers the Navy's modifications to the method of shipment, the method of packing, the place of delivery, and the "[d]rawings, designs, or specifications" for specially manufactured items. *Id.* The clause provides that if the Navy makes any of those modifications, the contracting officer "shall make an equitable adjustment." *Id.*

The contract also incorporates a changes clause from outside the FAR that defines "authorized changes" for the entire contract. That clause is unique to the Naval Surface

Warfare Center Carderock Division and is referred to as the NSWCCD changes clause.  It states as follows:

> (a) Except as specified in paragraph (b) below, no order, statement, or conduct of Government personnel who visit the Contractor's facilities or in any other manner communicates with Contractor personnel during the performance of this contract shall constitute a change under the "Changes" clause of this contract.

> (b) The Contractor shall not comply with any order, direction or request of Government personnel unless it is issued in writing and signed by the Contracting Officer, or is pursuant to specific authority otherwise included as a part of this contract.

The NSWCCD changes clause lists the contact information for the contracting officer, Mr. John Stefano, and declares that "[t]he Contracting Officer is the only person authorized to approve changes in any of the requirements of this contract."  The clause then warns that "any change at the direction of any person other than the Contracting Officer . . . will be considered to have been made without authority and no adjustment will be made in the contract price to cover any increase in charges incurred as a result thereof."

B

We recount the facts according to BGT's factual allegations in its amended complaint, which we accept as true for purposes of the Navy's motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A few months into the contract performance, the Navy procurement team—including Ms. Suzanne Onesti, the procurement manager—informed BGT that the Navy would not deliver the exhaust collector and engine mounts unless BGT provided a "cost savings" to the Navy, i.e., a decrease in the contract price commensurate with the

amount BGT would save by not having to procure the exhaust collector and engine mounts on its own. When asked about cost savings at oral argument, neither the government nor BGT identified a contract provision giving the Navy the right to demand a cost savings in exchange for supplying the designated items of GFE.

BGT declined to offer a cost savings for the exhaust collector and engine mounts that were to be provided as GFE. The Navy then notified BGT that the exhaust collector and engine mounts had been reallocated as fleet assets and would no longer be made available to BGT. To continue performing under the contract, BGT purchased those items on the commercial market at a cost of $610,775. BGT then submitted a request for an equitable adjustment for the cost of those items. In early 2017, BGT delivered the completed gas turbine generator to the Navy. The Navy accepted the generator but rejected BGT's request for an equitable adjustment for the cost of the exhaust collector and engine mounts.

According to BGT, the Navy's request for a cost savings and the Navy's final notice of GFE withdrawal were communicated at the direction of the contracting officer, Mr. Stefano. BGT does not allege, however, that the contracting officer issued a signed order concerning either communication.

Instead, BGT alleges facts that circumstantially connect the contracting officer to the GFE negotiations. According to BGT, the Navy instructed BGT to direct all communications to Navy employees Ms. Onesti and Ms. Carolyn McCloskey, "the conduits to the larger Navy team." BGT also alleges that it was the "usual course of performance" for the contracting officer's decisions to be communicated through Ms. Onesti or Ms. McCloskey. For example, Ms. Onesti communicated a directive that BGT should use its own testing data to size the water treatment system for the gas turbine. Mr. Stefano later

acknowledged that "when Ms. Onesti advised BGT that [the Navy] agreed that the water test results provided by BGT were to be used in sizing water treatment system for the [turbine], it could be construed as being tantamount to acceptance and authorization to proceed with the contractor's intended revisions."

Furthermore, according to BGT, the contracting officer must have directed the Navy's communications regarding the exhaust collector and engine mounts because he was the only person with authority to withdraw those GFE items and reallocate them as fleet assets. Relatedly, BGT alleges that the contracting officer "knew or should have known" of the Navy's request for a cost savings and the Navy's threatened withdrawal of GFE because BGT communicated those issues in progress reports that were regularly distributed to the contracting officer.

C

BGT organized its amended complaint into five counts. Two of those counts, Counts IV and V, are not at issue in this appeal.

A fair reading of the allegations in Counts I through III reveals five possible grounds for relief: First, the complaint alleges that the Navy's decision to withdraw the exhaust collector and engine mounts constituted a constructive change of the GFE provision for which BGT is entitled to an equitable adjustment. Although the contracting officer did not issue a signed order withdrawing those items of GFE, the complaint alleges that the contracting officer ratified the Navy's decision to withdraw those items by reallocating them as fleet assets, thus providing the requisite authority for a constructive change.

Second, the complaint alleges that the contracting officer waived the Navy's rights under the NSWCCD changes clause, thus converting the Navy's decision to decrease

GFE into an official change for which BGT is entitled to an equitable adjustment.

Third, the complaint alleges that the Navy breached its contractual duty to deliver the exhaust collector and engine mounts, and that BGT is entitled to contract damages for that breach.

Fourth, the complaint alleges that the Navy breached its contractual duty to provide BGT an equitable adjustment after failing to deliver those GFE items, and that BGT is entitled to contract damages for that breach.

Fifth, the complaint alleges that the Navy breached its implied duty of good faith and fair dealing by intentionally withholding those GFE items and thus obstructing BGT's performance under the contract. BGT contends that it is entitled to an award of damages for that breach.

Under each of its theories of liability, BGT seeks an award of $610,775, the cost BGT incurred in purchasing the exhaust collector and engine mounts on the commercial market.

The Claims Court dismissed Counts I through III of BGT's amended complaint and entered a final judgment on those counts under Rule 54(b) of the Rules of the Court of Federal Claims. *BGT Holdings, LLC v. United States*, 142 Fed. Cl. 474, 484 (2019). The Rule 54(b) judgment entitled BGT to take an immediate appeal from the dismissal of those counts.

The Claims Court consolidated its analysis of BGT's first two claims—constructive change through ratification and official change through waiver. The court held that neither claim entitled BGT to an equitable adjustment, because "the specific contract language at issue here precludes [BGT's] arguments relating to ratification and waiver." *Id.* at 479–80, 482 (citing the NSWCCD changes clause and subsection (i) of the government property clause).

The court held BGT's claim of breach for failure to deliver the exhaust collector and engine mounts to be precluded by subsection (i) of the government property clause, which states that "the Government shall not be liable for breach of contract for . . . [a]n increase, decrease, or substitution of [GFE]." *Id.* at 482–83. Likewise, the court held that the contract precluded BGT's claim of breach for failure to provide an equitable adjustment, rejecting that claim based on its analysis of BGT's first two claims. *Id.* at 482. The court rejected BGT's final claim, alleging breach of the implied duty of good faith and fair dealing, given the Navy's right to decrease or withdraw GFE under the contract. *Id.* at 483–84.

## II

On appeal, BGT does not challenge the court's holding that the government property clause precludes BGT's claim of breach for failure to deliver the exhaust collector and engine mounts. *See* 48 C.F.R. § 52.245-1(i) (precluding claims of breach for the increase, decrease, substitution, or delay in delivery of GFE). BGT challenges the dismissal of its remaining claims, however. With respect to rights arising under the contract, BGT argues that it is entitled to an equitable adjustment under both the government property clause and the fixed-price changes clause. In addition, BGT contends that it is entitled to compensation because the government breached its implied duty of good faith and fair dealing by withdrawing GFE items and then refusing to compensate BGT for that withdrawal through an equitable adjustment.

## A

The most straightforward claim in BGT's amended complaint is that the Navy breached the government property clause, 48 C.F.R. § 52.245-1, by failing to provide an equitable adjustment after it withheld the GFE items it had agreed to deliver under the contract.

While the Navy was entitled to withdraw GFE under the government property clause, it was not free to do so without consequence. Two subsections of the government property clause are applicable to withdrawals of GFE. First, under subsection (d)(3)(i) of that clause, the contracting officer "may, by written notice, at any time—(A) Increase or decrease the amount of Government-furnished property under this contract; . . . ." In that event, subsection (d)(3)(ii) requires that the contracting officer "shall consider an equitable adjustment to the contract." Second, under subsection (d)(2)(i) of the government property clause, if the GFE promised under the contract "is not delivered to the Contractor by the dates stated in the contract, the Contracting Officer shall, upon the Contractor's timely written request, consider an equitable adjustment to the contract." Those two subsections cover cases in which GFE is not delivered, either by formal order of the contracting officer or otherwise. In either event, the remedy is the same: The contracting officer must consider an equitable adjustment.

BGT pleaded facts sufficient to support a claim of breach under the government property clause. Count II of the amended complaint alleges that the Navy's "refusal to provide an equitable adjustment was a material breach of the Contract." J.A. 33. Count II also incorporates facts from earlier portions of the amended complaint, including that the Navy withdrew certain GFE items, that BGT was forced to purchase those items on the commercial market because they were not delivered, that BGT requested an equitable adjustment in a timely manner, and that the Navy denied that request.

Even assuming that the contracting officer is not chargeable—through ratification or otherwise—with having ordered the withdrawal of the exhaust collector and engine mounts, the Claims Court erred by not considering the pathway to relief under subsection (d)(2)(i) of the government property clause. That pathway is available

regardless of whether the contracting officer executed a written authorization for withdrawing items of GFE identified in the contract.

If relief under subsection (d)(2)(i) were not available, and the contractor could seek relief only under subsection (d)(3)(ii), the government could avoid liability for reneging on its GFE commitments in any case simply by withdrawing GFE items without a written notice from the contracting officer.  The availability of relief under subsection (d)(2)(i) provides a backstop against such a ploy.

The government argues that BGT's claim under subsection (d)(2)(i) is untenable because the contracting officer was required only to "consider BGT's request for an equitable adjustment—not to grant the adjustment to BGT." Appellee's Br. 27.[1]  Under the government's theory, the phrase "shall consider" gave the contracting officer discretion to grant or deny an equitable adjustment and imposed no duty to grant an adjustment even if BGT could prove financial loss due to the government's withdrawal of the exhaust collector and engine mounts.

We reject the government's interpretation of the term "shall consider" because it would produce absurd results under the government property clause.  *See United States v. Winstar Corp.*, 518 U.S. 839, 907 (1996) (avoiding a contract interpretation that "would be absurd"); *Keepseagle v. Perdue*, 856 F.3d 1039, 1047 (D.C. Cir. 2017) (interpreting an ambiguous contract term in order to avoid an absurd result).  To illustrate, assume that the committed GFE in this case had a total value nearing $5 million, well over half of the contract price of $8.25 million.  *See* J.A. 24–25.  If the

[1]    While the government asserted this argument in connection with subsection (d)(3)(ii), its logic would extend to subsection (d)(2)(i) because that subsection also includes the "shall consider" phrase.

Navy had withdrawn all GFE, as the contract allows, it would be implausible to posit that the Navy's only obligation would be merely to "think over" BGT's request for an equitable adjustment before denying it.  It is dubious, to say the least, that the drafters of the FAR's government property clause, 48 C.F.R. § 52.245-1, envisioned that the government would essentially have an unfettered right to withdraw promised GFE from a contract without consequence.

The correct interpretation of "shall consider" in this contract setting does not give the government absolute discretion, but instead holds the government to a duty of good faith and reasonableness.  *See Goldstein v. Johnson & Johnson*, 251 F.3d 433, 444 (3d Cir. 2001) ("Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith—a requirement that includes the duty to exercise the discretion reasonably." (citing the Restatement (Second) of Contracts § 205 & cmt. a)); *Walsh v. Zurich Am. Ins. Co.*, 853 F.3d 1, 14 (1st Cir. 2017) (stating the same under New Hampshire law); *Stokes v. DISH Network, L.L.C.*, 838 F.3d 948, 952 (8th Cir. 2016) (stating the same under Colorado law).  Moreover, the FAR demands that the contracting officer exercise impartiality, fairness, and equitable treatment when considering requests for equitable adjustments.  *See* 48 C.F.R. § 1.602-2 ("Contracting officers shall . . . (b) Ensure that contractors receive impartial, fair, and equitable treatment; . . . .").  The government's interpretation of "shall consider" would invite subversion of that responsibility.

Accordingly, we vacate the dismissal of BGT's claim that the Navy breached its duty to provide an equitable adjustment after it failed to deliver the exhaust collector and engine mounts.  On remand, the Claims Court must determine whether BGT is entitled to an equitable adjustment as fair compensation for the failure to deliver those GFE items.

B

Apart from subsection (d)(2)(i) of the government property clause, BGT argues that it is entitled to an equitable adjustment under either subsection (d)(3)(ii) of the government property clause or the fixed-price changes clause. The Claims Court rejected that claim on the ground that the Navy's withdrawal of GFE was not communicated in a writing signed by the contracting officer, as required by the NSWCCD changes clause, and therefore was not compensable under the contract.[2]

In response, BGT argues that the Navy's withdrawal of the exhaust collector and engine mounts constituted a constructive change to the contract because that withdrawal was ratified by the contracting officer after the fact. In the alternative, BGT argues that the Navy's withdrawal of those GFE items constituted an official change to the

---

[2] The government argues that BGT waived its claim for an equitable adjustment based on a constructive change because the amended complaint did not contain a citation to the changes clause, 48 C.F.R. § 52.243-1. Rule 9(k) of the Rules of the Court of Federal Claims, on which the government relies, requires a party pleading a claim founded on a contract to identify the substantive provisions of the contract on which the party relies or annex to the complaint a copy of the contract, indicating the relevant portions. BGT annexed a copy of the contract to its amended complaint, and its claim of constructive change effectively identified the changes clause as the source of its asserted right to an equitable adjustment. *See* J.A. 31. Moreover, the government waived this argument by not raising it before the Claims Court. The government's only reference to Rule 9(k) before the Claims Court related to the government property clause, not the changes clause. *See* J.A. 180.

contract because the Navy waived any requirement that the change be approved in writing by the contracting officer.[3]

1

To demonstrate a constructive change, a plaintiff must show (1) that it performed work beyond the contract's requirements, and (2) that the additional work was ordered, expressly or impliedly, by the government. *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014). As to the second element, the directive ordering the additional work must come from an individual having actual authority to bind the government. *RMA Eng'g S.A.R.L. v. United States*, 140 Fed. Cl. 191, 234 (2018) (citing *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1344 (Fed. Cir. 2007)). A clause that explicitly and exclusively assigns modification authority to a contracting officer ensures that other employees are not deemed to have implied authority to modify the contract. *Winter*, 497 F.3d at 1346. In this case, the NSWCCD changes clause assigned modification authority exclusively to the contracting officer. As a result,

---

[3]    Because both parties treat the NSWCCD changes clause as applicable to the withdrawal of the GFE in this case, we accept that premise for purposes of the changes clause arguments. It is not clear, however, that the changes clause applies with full force to a case such as this one, in which the government is not directing the contractor to make changes but is unilaterally making the changes itself. In that setting, it makes little sense to say that the contractor should not undertake to make changes other than as directed in a written order by the contracting officer, since the contractor has no way to decline to make a change that was made unilaterally by the government, whether directed by the contracting officer or otherwise.

other Navy employees, including Ms. Onesti, did not have actual or implied authority to modify the contract.

BGT does not allege that Ms. Onesti or any other Navy employee acted with actual or implied authority when communicating the Navy's decision to withdraw the exhaust collector and engine mounts.  Instead, BGT alleges ratification as a substitute for actual authority.  *See Northrop Grumman Sys. Corp. v. United States*, 140 Fed. Cl. 249, 277 (2018) (analyzing ratification as a substitute for actual authority within the context of constructive change); *see also Winter*, 497 F.3d at 1346; Restatement (Third) of Agency § 4.01 (2006) ("Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.").

According to BGT's amended complaint, the contracting officer ratified the Navy's informal decision to decrease the GFE because the contracting officer had knowledge of that decision from submitted progress reports and affirmed that decision by reallocating the exhaust collector and engine mounts as fleet assets.  Assuming that a constructive change did occur, BGT has a plausible path to a remedy under either subsection (d)(3)(ii) of the government property clause or the fixed-price changes clause.  *See NavCom Def. Elecs., Inc. v. England*, 53 F. App'x 897, 900 (Fed. Cir. 2002) (noting that the remedy for a constructive change is "an equitable adjustment under the 'changes' provision of the contract" (quoting *Ets-Hokin Corp. v. United States*, 420 F.2d 716, 720 (Ct. Cl. 1970))).

In dismissing BGT's claim of constructive change, the Claims Court did not reach the merits of BGT's ratification theory, i.e., whether BGT alleged sufficient facts to support a plausible claim of constructive change through ratification.  *See BGT Holdings*, 142 Fed. Cl. at 479–82.  Rather, the court held that BGT had contractually waived its right to assert ratification by agreeing to the NSWCCD changes clause.  *Id.* at 481–82.  The court noted that the NSWCCD

changes clause warned BGT not to comply "with any order, direction or request" from anyone other than the contracting officer and that it put BGT on notice that "no adjustment will be made in the contract price to cover any increase in charges incurred as a result" of unauthorized orders. *Id.* at 482. According to the court, that unambiguous language precludes ratification, and by agreeing to that clause, BGT waived its right to assert ratification in future litigation. *Id.*

BGT argues that the language of the NSWCCD changes clause does not address ratification and thus does not preclude a finding of ratification in this case. We agree. Our decision in *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339 (Fed. Cir. 2007), provides strong support for BGT's argument on this issue. The changes clause in the contract at issue in *Winter* is quite similar to the NSWCCD changes clause in this case. And in spite of the changes clause in *Winter*, we effectively endorsed the possibility of ratification in *Winter* by remanding the case for a more detailed analysis of the plaintiff's ratification theory.

The government argues that *Winter* is distinguishable because the changes clause in that case contained additional language stating that unauthorized modifications would not bind the government "unless formalized by proper contractual documents executed by the Contracting Officer prior to completion of this contract." *Winter*, 497 F.3d at 1345. According to the government, that clause provided a contractual basis for the plaintiff's ratification theory in *Winter* that is not present here. Second, the government points out that contract-based waiver was not asserted in the *Winter* case. As a result, the government argues that *Winter* did not resolve the issue of contract-based waiver.

We disagree with the government's first argument. The "unless" clause in *Winter* did not grant the contracting officer in that case any additional authority to ratify

changes relative to the contracting officer's authority in this case. It is clear that none of the contract provisions in this case—including the NSWCCD changes clause and subsection (d)(3)(i) of the government property clause—restrict the contracting officer's authority to ratify an unauthorized change after the fact. If anything, relative to this case, the "unless" clause in *Winter* had the effect of limiting ratification authority by specifying the circumstances in which the contracting officer could ratify a prior action by an unauthorized government employee. The contract in *Winter* is thus not distinguishable from the contract in this case in a way that undermines BGT's ratification argument.

As for the government's second argument, it is true that *Winter* did not address contractual waiver and thus does not represent binding precedent as to that issue. Nonetheless, by recognizing the availability of ratification in the face of contract provisions similar to those in this case, *Winter* at least casts doubt on the proposition that contract language that is silent as to ratification, such as the language in the NSWCCD changes clause, is sufficient to bar a contractor's ratification theory.

In light of our decision in *Winter*, the language of the NSWCCD changes clause, and the contract as a whole, we hold that BGT did not contractually waive its ratification theory. The contract in this case does not mention "ratification." Nor does the contract otherwise expressly limit the contracting officer's authority to ratify prior actions that were not made in full compliance with procedures required by the contract. Contrary to the government's contention, the NSWCCD changes clause simply does not address the fact pattern of ratification—an unauthorized employee communicating a change in the first instance, and the contracting officer taking affirmative steps to confirm that change.

Accordingly, we vacate the dismissal of BGT's claim that the Navy's decision to decrease GFE was a constructive change through ratification. We remand for the Claims Court to determine whether BGT pleaded facts sufficient to support its ratification theory and, if so, whether BGT can prove that the contracting officer ratified the withdrawal of the exhaust collector and engine mounts.

2

In addition to pleading ratification, BGT alleges that the contracting officer waived the requirement that changes be made only through a signed writing, thus making the Navy's decision to withdraw GFE an official change under the contract. If BGT prevails on its theory of official change through waiver, it would have a plausible path to a remedy under either subsection (d)(3)(ii) of the government property clause or the fixed-price changes clause.

BGT asserts that the contracting officer waived the Navy's rights under the NSWCCD changes clause through a pattern of conduct. In particular, BGT alleges that the contracting officer, by virtue of his position of authority, knew of the Navy's right to make changes exclusively through a signed writing. BGT further alleges that the contracting officer relinquished that right when he authorized the withdrawal of GFE—which only he had the authority to do—and did so other than through a signed, written order. Finally, BGT alleges that the contracting officer waived that right when he characterized a previous communication from Ms. Onesti as being "tantamount to acceptance and authorization" of a requested operating procedure.

As with BGT's claim of constructive change, the Claims Court did not address whether BGT alleged sufficient facts to support a plausible claim of change through waiver. *See BGT Holdings*, 142 Fed. Cl. at 479–82. Rather, the court dismissed BGT's claim of waiver for the same reasons it dismissed BGT's claim of constructive change: It held that

BGT had contractually waived its right to assert waiver by agreeing to the NSWCCD changes clause, which was "unambiguously and diametrically opposed" to BGT's waiver theory. *Id.* at 481–82.

BGT argues that the language of the NSWCCD changes clause does not address waiver and thus does not preclude its waiver theory. The government takes the opposite position. Neither party cites precedent that is directly relevant to the issue. And our decision in *Winter* did not address the type of waiver theory that BGT asserts.

We hold that BGT did not contractually waive its waiver theory. The NSWCCD changes clause has nothing to say about the fact pattern of waiver, i.e., an authorized individual with knowledge of a contract right taking actions that evince an intent to abandon that right.

The NSWCCD changes clause warns BGT not to comply with any order "unless it is in writing and signed by the Contracting Officer." To be sure, that language addresses actions by the contracting officer, an authorized individual with knowledge of contract rights. But the purpose of that language is to warn BGT to disregard orders from unauthorized personnel, not to prevent the contracting officer (or some other high-level official) from intentionally waiving the government's rights as to how changes must be ordered.

The government argues that BGT's waiver theory contradicts the NSWCCD changes clause because that clause "unambiguously states that any directive by unauthorized Government personnel 'will be considered to have been made without authority.'" Appellee's Br. 21. Relatedly, the government argues that BGT's waiver theory would contradict the settled principle that actions by unauthorized government employees do not bind the government.

The government's arguments miss the point. BGT is not asserting that lower-level employees waived the Navy's

rights. Nor could it make such an assertion, because the doctrine of waiver assumes that the individual committing waiver has authority to waive a right in the first instance. *See Molton, Allen & Williams, Inc. v. Harris*, 613 F.2d 1176, 1178 (D.C. Cir. 1980) (analyzing "whether the government agent dealing with appellant had authority to and in fact did waive [a contract] provision"); *Globe Indem. Co. v. United States*, 102 Ct. Cl. 21, 38 (1944) (holding that the government's engineer and architect did not have authority to waive certain contract rights). Rather, BGT is asserting that the contracting officer waived the Navy's rights, which does not contradict the settled principle that actions by unauthorized government personnel cannot bind the government. *See Winter*, 497 F.3d at 1344.

Because we disagree with the Claims Court's ruling that BGT's waiver theory was precluded by the contract, we vacate the dismissal of BGT's claim of official change through waiver. We remand for the court to determine whether BGT pleaded facts sufficient to support its waiver theory and, if so, whether the contracting officer waived the requirement that changes be made only by a written order of the contracting officer.

C

The final claim for relief in BGT's amended complaint is that the Navy breached its implied duty of good faith and fair dealing by intentionally withholding the exhaust collector and engine mounts and by communicating its decision to withhold those GFE items in an unsanctioned manner. BGT alleges that the Navy's conduct frustrated BGT's ability to perform its contractual obligations by forcing it to incur $610,775 in excess costs.

In dismissing BGT's claim, the Claims Court considered the express language of the contract, which gives the Navy the ability to decrease or withdraw GFE and precludes a claim of breach for such actions. *BGT Holdings*, 142 Fed. Cl. at 483–84 (citing subsections (d)(3)(i)(A),

(d)(3)(i)(A)(C), and (i)(3) of the government property clause). As a result, the court held that the Navy's withdrawal of GFE did not violate its implied duty of good faith and fair dealing. *Id.*

We agree with the Claims Court that the implied duty of good faith and fair dealing provides no basis for extra-contractual relief in this case. The contract unquestionably gives the Navy the right to decrease or withdraw GFE. BGT cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits. *See Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010) ("The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions.").

For the reasons set forth in parts II-A and II-B above, the contract itself provides other avenues of relief for BGT that preempt the need to invoke the doctrine of good faith and fair dealing. BGT's complaints regarding the Navy's practice of communicating directives other than through the contracting officer's signed writing are fully addressed by BGT's alternative theories for relief under the government property clause and the fixed-price changes clause as we have construed them. *See Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1066 (9th Cir. 2017) ("[Appellant] has sufficiently alleged that [appellee] breached an express provision of terms of transportation and thus need not rely on this interpretive doctrine [of good faith and fair dealing]."); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (finding good faith and fair dealing redundant "when a breach of contract claim, based upon the same facts, is also pled"); *CFS Int'l Cap. Corp. v. United States*, 118 Fed. Cl. 694, 701 (2014) (same). Moreover, because the application of the "shall consider" language in the government property clause already imposes a duty of good faith on the Navy, there is no justification for invoking an

extra-contractual duty of good faith that would be redundant of the duty imposed by that clause.

Although BGT relies on the doctrine of good faith and fair dealing as a separate ground for relief, that claim is based on the same set of facts as BGT's other claims. The contract itself defines the parties' respective rights in light of those facts. If the contract had expressly authorized the Navy to withdraw the GFE without consequence, the parties' rights would be settled by the contract, and the duty of good faith and fair dealing would have no role to play in resolving this dispute. Because we interpret the contract to provide BGT a mechanism for obtaining compensation for the withdrawal of GFE, BGT's rights are likewise governed by the contract, and the doctrine of good faith and fair dealing cannot be employed to readjust those rights. We therefore affirm the dismissal of BGT's claim of breach of good faith and fair dealing.

## III

In sum, we vacate the Claims Court's dismissal of BGT's claims of constructive change through ratification, official change through waiver, and breach for failure to provide an equitable adjustment, and we remand on those claims for further proceedings consistent with this opinion. We affirm the Claims Court's dismissal of BGT's claim of breach of the implied duty of good faith and fair dealing.

No costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**