ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - ) | |
| ) | |
| JE Dunn Construction Company ) | ASBCA No. 63183 |
| ) | |
| Under Contract No. W9127S-17-D-6003 ) | |

APPEARANCES FOR THE APPELLANT:    Nicholas T. Solosky, Esq.
        Reginald M. Jones, Esq.
        Morgan M. Tapp, Esq.
         Fox Rothschild LLP
         Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
         Engineer Chief Trial Attorney
        Michael T. Geiselhart, Esq.
         Engineer Trial Attorney
         U.S. Army Engineer District, Jacksonville

        Allen S. Black, Esq.
         Engineer Trial Attorney
         U.S. Army Engineer District, Little Rock

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

     Appellant, JE Dunn Construction Company (JE Dunn), requests $949,054 and a 57-day compensable time extension, arising from a contract to design and construct the HVAC (heating, ventilation, and air conditioning) system serving the Guthrie Ambulatory Health Care Clinic at Fort Drum, New York.[1] JE Dunn says that the government changed the contract with respect to boilers and humidifiers, and delayed project completion by delaying the installation of "hydronic piping" by 77 days, but

---

[1] App. br. at 1, 66. Count II of JE Dunn's complaint alleges violations of the Prompt Payment Act. (Compl. at 7). JE Dunn does not address that count in post-hearing briefing; accordingly, that count is waived or abandoned. *ECC International Constructors, LLC (ECCI)*, ASBCA No. 59586, slip op. at 13; 2025 WL 1357784 (Apr. 18, 2025) (citing cases), *appeal docketed*, No. 2025-1978 (Fed. Cir. July 30, 2025). Consequently, the government's April 26, 2024 motion for summary judgment upon, or dismissal of, that Prompt Payment Act claim is denied as moot.

that JE Dunn mitigated 20 of those days.[2]  We held a hearing in 2023.  For the reasons stated below, the appeal is denied.

## FINDINGS OF FACT

The government awarded the contract in 2017, and, on September 25, 2018, issued a task order to perform the work at Fort Drum.[3]  The task order required the design, renovation, and construction of an HVAC system.[4]  The scope of the task order includes replacement of humidifiers, boilers, pumps, hydronic piping, and coils.[5]  Hydronic piping is a system of pipes that carries hot and chilled water to heating and cooling coils in HVAC equipment.[6]

The work was to be completed "not later than 1145 calendar days after the date of the notice to proceed."[7]  The notice to proceed was issued on November 12, 2018.[8]  JE Dunn completed the project in July 2022.[9]  On February 21, 2020, JE Dunn submitted to the government its Issued for Construction (IFC) submittal.[10]  JE Dunn says that the government approved the IFC, but JE Dunn does not provide the date of that approval.[11]

*Boilers and Humidifiers*

The task order provides "[w]inter design temperature has been requested to be - 30°F."[12]  The task order also provides "[p]er UFC [Uniform Facilities Criteria] 03-410-01, all heating equipment and distribution sizing shall be designed with a 15% safety factor."[13]  Section 3-4.1 of UFC 03-410-01 states "[p]rovide no more than a

---

[2] App. br. at 2, 6.

[3] R4, tabs 1 at 2, 2 at 46.

[4] R4, tab 2 at 47.

[5] App. br. at 10-11 ¶ 2; *see* gov't br. at 3-4.

[6] App. br. at 2; *see* tr. 1/37.

[7] R4, tab 2 at 55.

[8] *See* gov't br. at 5 ¶ 4 (1,145 days after November 12, 2018, is December 31, 2021).

[9] Tr. 1/224.

[10] App. br. at 5 (citing R4, tab 22); gov't br. at 7, 12 ¶ 25 (citing JE Dunn R4, at 82-100).

[11] *See* app. br. at 11 ¶ 7.

[12] App. prehearing br. at 13-14 (citing and reproducing material found at R4, tab 11 at 831 § 7); *see* app. br. at 14 ¶ 25 (referencing RFP); 35 & n.105 (citing R4, tab 11 at 831); gov't br. at 1-2 & n.1 (citing R4, at 831).

[13] App. prehearing br. at 16 (reproducing material found at R4, tab 11 at 793 and 886 § c.1.1.5); *see* app. br. at 15 ¶ 34 & n.53, 42 & n.129, 44 & n.135; (referencing

[1.15] safety factor for heating equipment and distribution sizing . . . for morning warmup."[14]  The contract includes U.S. Army Corps of Engineers Acquisition Instruction (UAI) 5152.236-9004, RESPONSIBILITY OF THE CONTRACTOR FOR DESIGN (MAY 2002), which provides:

>  (a) The Contractor shall be responsible for the professional quality, technical accuracy, and the coordination of all designs, drawings, specifications, and other non-construction services furnished by the Contractor under this contract.  The Contractor shall, without additional compensation, correct or revise any errors or deficiency in its designs, drawings, specifications, and other non-construction services . . . .
>
>  . . .
>
>  (c) Neither the Government's review, approval or acceptance of, nor payment for, the services required under this [C]ont[r]act, shall be construed to operate as a waiver of any rights under this contract or of any cause of action arising out of the performance of this contract.[15]

On February 25, 2020, JE Dunn submitted to the government Transmittal No. 23 52 00-3, regarding "heating boilers"; the government rejected that submittal on March 10, 2020, with an "E" Code, requesting additional "boiler technical data," including "capacities, connection sizes, fuel requirements, electrical requirements, [and] water/flow requirements," and other data, and required JE Dunn to revise the transmittal "to include new (not reused) electrical infrastructure components."  The rejection of the submittal does not reference a safety factor, much less that JE Dunn's boiler design provided for a safety factor of less than 15% percent.[16]  Nevertheless, JE Dunn's boiler design provided for a safety factor of less than 15% percent.[17]

---

RFP and citing R4, tab 11 at 886); gov't br. at 6 ¶ 7 (citing R4, at 793, 886), 28, 34-35 (citing R4, at 793); reply at 28 (citing R4, tab 11 at 793).

[14] R4, tabs 4 at 111, 47 at 17 (alteration added).

[15] R4, tab 1 at 37 (alteration added).

[16] *Id.*  The government says, without record citation, that "[o]n 28 April, 2020, the Government noted that the heating hot water system design did not appear to include a 15% safety factor."  Gov't br. at 12.  JE Dunn does not reply to that assertion.

[17] App. supp. R4, tab 32 at 2868-69; tr. 1/127-28; tr. 1/186-87; R4, tab 10 at 634 (indicating a 2% safety factor and a 6% safety factor).

3

On March 13, 2020, JE Dunn submitted to the government Transmittal No. 23 81 00-1, regarding humidifiers; the government rejected that submittal on March 30, 2020, with an "E" Code, requiring JE Dunn to revise its humidifiers, "if needed," to meet the "required winter design temperature [of] -30 degrees [Fahrenheit]."[18] JE Dunn had designed the humidifiers, not to negative 30 degrees Fahrenheit, but to *"- 4 Degrees (F) Dry Bulb, - 5 Degrees (F) Wet Bulb*, and 3 Grains per Pound Humidity Ratio."[19]

Eventually, JE Dunn complied with government's direction "to select humidifiers for -30degF outside air and apply the 1.15 safety factor to boilers,"[20] modifying the sizing of the humidifiers to "minus 30 degrees,"[21] and redesigning the boiler system to include a 15% safety factor;[22] effectively "upsizing" both the boilers and the humidifiers.[23] Indeed, JE Dunn's design team specifically advised JE Dunn that it was possible to design the humidifiers to the negative 30 degree Fahrenheit winter design temperature.[24]

*Hydronic Piping Installation*

*Transmittals and Mold Remediation*

On April 7, 2020, JE Dunn submitted to the government Transmittal No. 23 64 26-5, its "Phase 1A-Hydronic Shop Drawings"; the government rejected that submittal on April 17, 2020, with an "E" Code, including for reasons having to do with piping insulation, not (at least not ostensibly) boilers and humidifiers:

> Submit heating hot water piping components for VAV-E/6N.1-07 (1-1/4 inch pipe). Per Paragraph 6.4.4.1.3 Piping Insulation of ASHRAE 90.1, "Piping shall be *thermally insulated . . . .* [25]

JE Dunn resubmitted the drawings on April 21, 2020, in Transmittal No. 23 64 26-5.1; on May 13, 2020, the government rejected that submittal, with an "E" Code, because of "issues pertaining to the perimeter heating system," "issues related to space heating

---

[18] App. br. at 21; gov't br. at 28; app. supp. R4, tab 35 at 3210-11.
[19] App. supp. R4, tab 35 at 3210-11; app. br. at 14 ¶ 24 (emphasis added); tr. 2/204-05.
[20] App. supp. R4, tab 26 at 153.
[21] Tr. 1/115.
[22] App. supp. R4, tab 26 at 153.
[23] Tr. 1/80 (boilers); 1/122, 125, 146, 3/147 (humidifiers).
[24] *See* tr. 1/113-15.
[25] App. br. at 21; app. supp. R4, tab 37 at 3534-35; *see* tr. 1/90-91; 2/127.

and distribution equipment safety factor," and various issues regarding insulation.[26] The government told JE Dunn to "[m]ake corrections to the heating hot water system," and "[r]evise and resubmit Phase 1A hydronic shop drawings after the heating hot water system has been corrected, reviewed and finalized."[27]

Ductwork replacement was also a project work activity,[28] and on May 18, 2020, mold was discovered in ductwork.[29] Mold remediation "overtook" the project's critical path on June 19, 2020, was still on the critical path in July 2020, and was the subject of remediation work until April 12, 2022.[30]

On May 20, 2020, JE Dunn wrote to "to notify the Government of schedule delay and financial impacts related to submittal approval."[31] JE Dunn explained that, in its view, "[t]he project has been impacted by the approval of submittals, adding weeks to the procurement process and delaying preparatory meetings," and that "[s]everal submittals have had revisions due to Governments (sic) rejections based on comments unrelated to the submittal."[32] In a second May 20, 2020 letter to the government, JE Dunn stated that the project's critical path was being delayed by the government's rejection of submittals regarding not only the hydronic shop drawings, but also hydronic pumps and fin tube radiation equipment, and that "Phase 1A Schedule ID P1A-1120 was supposed to start on 01 May 2020."[33] Activity ID P1A-1120 is "Fin Tube Heater Install[ation],"[34] which we understand to be a type of floor-mounted baseboard-type heating equipment.[35] The government rejected JE Dunn's March 6, 2020 "fin tube radiation equipment" submittal on March 26, 2020, with an "E" Code, because "[t]he submittal documents did not include[] the required perimeter baseboard heating units required for the Lobby, Rm 1300, and [are] incomplete."[36] There is no indication in that rejection, and JE Dunn does not explain how, from a construction or engineering perspective, fin tube heating installation is related to hydronic piping installation.

---

[26] R4, tab 8 at 211-12 (bracketed material added).

[27] R4, tab 8 at 211.

[28] Tr. 2/38.

[29] Tr. 1/203-04, 2/66, 70. According to JE Dunn's Project Manager, Brian Hoeppner, mold was not discovered in ductwork until late June 2020. (*See* tr. 1/29, 208-10, 214.) However, we find that the mold was discovered on May 18, 2020.

[30] Tr. 2/62-63, 66, 68, 90, 4/19; app. reply at 19.

[31] R4, tab 10 at 594.

[32] R4, tab 10 at 594.

[33] R4, tab 10 at 597.

[34] R4, tab 8 at 147 (alteration added).

[35] R4, tab 8 at 310; *see* app. pre-hearing br. at 9.

[36] App. supp. R4, tab 34 at 3159-60 (alterations added).

JE Dunn resubmitted the hydronic shop drawings on May 28, 2020, in Transmittal No. 23 64 26-5.2.[37]  The government rejected that submittal on June 8, 2020, with an "E" Code, for reasons including "insulation for wye strainers and other applicable fittings and accessories."[38]  JE Dunn resubmitted the hydronic shop drawings on June 15, 2020, in Transmittal No. 23 64 26-5.3.[39]  The government rejected that submittal on June 16, 2020, with an "E" Code, including for JE Dunn to (1) "include pipe extensions and positive shutoff valves," (2) "[i]ndicate location of pipe extensions, shutoff valves and quick connecting hose fittings in relation to insulation," and (3) referencing "Letter No. C-0025,"[40] "[r]evise submittal to include all applicable corrections to the design."[41]

On June 17, 2020, in Letter No. C-0025, the administrative contracting officer (ACO) informed JE Dunn, referencing the 15% safety factor and the minus 30 degrees requirement, that:

> JE Dunn must provide a revised design to fully meet the
> noted contract requirements at no additional cost to the
> government. . . .  In addition, JE Dunn must provide for
> government review, a design correction narrative and
> recovery schedule no later than 28 June, 2020 detailing the
> way forward on the overall project.[42]

JE Dunn resubmitted its hydronic shop drawings on June 30, 2020, in Transmittal No. 23 64 26-5.4.[43]  Less than a week later, on July 6, 2020, by Letter C-0028, the ACO allowed JE Dunn "to proceed with [] installation of hydronic piping."[44]  The

---

[37] R4, tab 8 at 235.

[38] R4, tab 8 at 234.

[39] R4, tab 8 at 266.

[40] R4, tab 8 at 265 (alteration added).

[41] R4, tab 8 at 265.

[42] R4, tab 10 at 714-15.

[43] R4, tab 8 at 285.

[44] R4, tab 44 (alteration added); gov't br. at 4.  JE Dunn misquotes Letter C-0028 (R4, tab 44) as saying that "Contract submittals could not be approved until the Government received an acceptable design on which to review the submittals." App. br. at 2.  (Elsewhere, at page 6, footnote 12 of its initial post-hearing brief, JE Dunn says that the same quote appears at "AR 0028.")  Letter C-0028 does not include that statement; that statement appears at R4, tab 10 at 712, which is a November 16, 2020 government letter (Letter No. C-0035) that JE Dunn accurately quotes at page 9, footnote 21 of its initial post-hearing brief.  In yet another footnote, JE Dunn points out that at R4, tab 10 at 577, the government instructed JE Dunn to "refer to letter C-0028 with direction to move forward

government issued its approval of JE Dunn's hydronic shop drawings on July 10, 2020, with a "B" code.[45]

*JE Dunn's Delay Analysis and the Testimony of Sarah Meeks*

On August 6, 2020, JE Dunn's Planning and Scheduling Manager, Sarah Meeks, produced a 13-page schedule update—the "July Update"—and two fragnets, which comprise the delay analysis that JE Dunn would use to support its later requests for delay days from the government, including in this appeal.[46]  JE Dunn presented its schedule in the form of a PDF;[47] according to Jason Price, the government's scheduler, "PDFs are not in a scheduling world acceptable because they can be manipulated," and

> they only show the data that is wanting to be presented at
> the time. They do not show the logic that's associated with
> it . . . .[48]

Ms. Meeks added activities "into the Fragnet," describing those activities as "the time periods needed to do the redesign," presumably the hydronic shop drawings

---

[45] *See* R4, tab 8 at 284; R4, tab 8 at 203 (explaining "B" code as "Reviewed, Make Corrections Noted").

[46] R4, tab 10 at 435-54; tr. 1/215-16, 2/29.  A "fragnet" is "a sequence of new activities and/or activity revisions, logical relationships, and resource changes added to an existing schedule to demonstrate the influence of a new activity on the schedule." *Nassar Grp. Int'l N.G.I. S.A.L. (Offshore) R.C., doing bus. as NGI Afghanistan for Contracting*, ASBCA No. 58451 *et al.*, 22-1 BCA ¶ 38,206 at 185,549 n.15.

[47] "PDF" is the acronym for a "Portable Document Format." *See Data Mktg. Co. of Virginia v. United States*, 55 Fed. Cl. 685, 693 (2003), *aff'd in part, vacated in part, remanded*, 107 F. App'x 187 (Fed. Cir. 2004) (unpublished).

[48] Tr. 4/9, 11; *see also*, tr. 4/13.

with Hydronic Install."  App. br. at 12-13 n.38.  Although JE Dunn does not reference the date of that page of the record, that page bears the date June 16, 2020.  However, the quoted language appears in an undated, red-colored box inserted into a June 16, 2020 document that, in another version, does not contain the quoted language.  R4, tab 10 at 265.  JE Dunn does not address that discrepancy, and nowhere in JE Dunn's briefing do we find the date June 16, 2020.  We are not persuaded (assuming that JE Dunn even wants us to find) that on June 16, 2020, the government instructed JE Dunn to "refer to letter C-0028 with direction to move forward with Hydronic Install."  And again, Letter C- 0028 is dated July 6, 2020, which date JE Dunn acknowledges in footnote 3 on page 2 of its initial post-hearing brief.

redesign that the government demanded.[49] Fragnet 1 lists nine such activities,[50] represented as diamonded "milestones," and referencing project correspondence from May and June, 2020, concerning: (1) onsite health and cleaning changes due to COVID-19 (H-0019);[51] (2) whether and the extent to which "overhead heating will be 'supplemented with radiant heat and/or floor mounted fin tube radiation'" (H-0020, C-0021);[52] (3) "schedule delay and financial impacts related to submittal approval," and "potential material delays due to COVID-19" (H-0022);[53] (4) the government's rejection of several submittals "due to the ongoing perimeter heating discussion," specifically, "Phase 1A Tab Schematic Drawings and Report, Phase 1A Hydronic Shop Drawings, Hydronic Pumps, Fin Tube Radiation Equipment" (H-0021);[54] (5) the perimeter heating design, including the 15% safety factor and the "-30degF ambient temperature" requirement (H-0023);[55] (6) the 15% safety factor regarding boilers (H-0027);[56] (7) the government's June 17, 2020, halting of hydronic piping installation pending JE Dunn's redesign of the boilers and humidifiers (C-0025);[57] (8) JE Dunn's June 25, 2020 letter titled "Perimeter Heating Delay," responding to the government's Letter C-0025, and requesting that the government allow JE Dunn be allowed to proceed with Phase 1A (H-0031);[58] and (9) the government's "Improper Design Parameter," including the "- 30 deg F winter design requirement," and the 15% safety factor, as applied to boilers, pumps, the piping system, and coils (H-0030, C-0025).[59]

The July Update depicts progress through the end of July 2020, and forecasts work starting in August 2020.[60] The update also projects that Activity P1A-4390, Install Hydronic Branch Piping, will start on June 2, 2020, and finish on August 14, 2020, 41 days late.[61] Fragnet No. 1 projects project completion on June 14, 2022, 77 days late; that is, 77 days behind schedule from the March 29, 2022 "contractual

---

[49] Tr. 1/23-24, 2/45-47.

[50] R4, tab 8 at 448; *see* tr. 2/25.

[51] R4, tab 10 at 448.

[52] R4, tab 10 at 448, 603.

[53] R4, tab 8 at 304.

[54] R4, tab 10 at 597.

[55] R4, tab 4 at 104-07.

[56] R4, tab 10 at 634-35.

[57] R4, tab 10 at 714-15.

[58] R4, tab 8 at 386.

[59] R4, tab 7 at 134-37.

[60] Tr. 2/30.

[61] R4, tab 8 at 146; 436.

date."[62]  "Fragnet for Submittals, ASI 2 & A,"[63] uses an "April Update," shows progress through April 30, 2020, and forecasts work starting in May 2020 through the end of the project.[64]

During the hearing of the appeal, Ms. Meeks confirmed that the fragnets are the product of data inserted into them in June 2020,[65] and that the delay analysis is a prospective analysis that shows hypothetical delay;[66] not a retrospective, time impact "forensic analysis" or "forensic schedule."[67]  When asked why JE Dunn did not "perform a forensic scheduling analysis to determine if the issues that are before the [B]oard were actually delays on the project," she answered, "[t]ypically the forensic analysis that I've done has been when they're in the past and," presumably referring to the then-ongoing nature of the Fort Drum project, "we were in the present."[68]  She explained that JE Dunn "created a Fragnet to show the overall duration that we were in [sic] *assuming to happen*."[69]  Specifically with respect to at least Fragnet No. 1, Ms. Meeks testified that JE Dunn "[knew] some durations and activities," but then was "also kind of making [its] best assumption on some of the activities that are happening in the future."[70]  Again regarding Fragnet No. 1, Ms. Meeks explained that the "items on the right-hand side of the middle of June [2020] time frame . . . *was our best guess or best assumption* of what was going to happen."[71]  And over the course of several non-responsive answers to direct questions on cross-examination, Ms. Meeks conceded that it is possible that there was concurrent project delay that her delay analysis does not identify but that "overlaps the delay" that JE Dunn alleges in this appeal, and that to determine whether there is such concurrent delay, she would "have to do a time impact analysis again knowing the information that we have now."[72]

---

[62] *See* R4, tab 8 at 145, 158, 161; tr. 1/216, 221, 224, 248; 2/30.  The August 6, 2020 schedule is an attachment to JE Dunn's September 18, 2020 REA, found at R4, tab 8 at 138.  The transcript of the hearing erroneously identifies the referenced version of the schedule as beginning at tab 10 at 45.  *See* tr. 1/221.  Tab 10 of the Rule 4 file is JE Dunn's July 19, 2021 claim.  R4, tab 10 at 423.

[63] "ASI" stands for "Architectural Supplemental Instruction."  Gov't br. at 12 ¶ 26.

[64] R4, tab 10 at 452-54.  The second fragnet shows progress only through December 2020, because, Ms. Meeks testified, "the last part of this project got cut off on the right-hand side."  Tr. 2/31.

[65] Tr. 2/55-56.

[66] *See* tr. 2/75.

[67] Tr. 2/75-78.

[68] Tr. 2/76 (alteration added).

[69] Tr. 2/78 (emphasis added).

[70] Tr. 1/232 (alterations and emphasis added).

[71] Tr. 1/234 (discussing R4, tab 10 at 448).

[72] Tr. 2/78.

During her testimony, Ms. Meeks appeared uninformed and confused regarding the alleged delays at issue. When asked to identify the "the days of delay" at issue in this appeal, she identified May 4 through August 4, 2020, but offered that some of the activities or milestones began in April 2020,[73] and believed that some of the submittals at issue had not been rejected by the government as late as June 2020.[74] When asked how one would arrive at the 57 days sought in this appeal from the approximately 90-day period (actually, 92 days) from May 4, 2020, through August 4, 2020, her answer was not clear:

> So it's not necessarily looking at the data date to the activities that were inserted. We're more looking at how those activities that were inserted affected the end date. So based on the activities that we tied it to within construction and how those were tied to the end date of the project. So it may be a chunk of 90-day activity, but it doesn't necessarily go hand-in-hand until we tie it into the construction work.[75]

Ms. Meeks also could not say whether hydronic piping installation was on the project's critical path "the entire time."[76] She could not identify the specific project delays at issue, even using her fragnets,[77] and when asked if it were possible to identify from the activities depicted in her fragnets which activities pertained to the issues in this appeal (that is, the boilers, humidifiers, and hydronic piping), she could not, testifying, that "you wouldn't be able to decipher that," and that one could not "look at any of [those] three issues [] and say, based on the activity IDs, this is it."[78]

In addition, Ms. Meeks did not make mold remediation the subject of a fragnet, even though (1) ductwork was a critical path activity;[79] (2) mold was discovered in ductwork on May 18, 2020,[80] and (3) mold remediation "overtook" the critical path on June 19, 2020, was still on the critical path in July 2020, and was the subject of remediation work until April 12, 2022.[81] And although she referenced "the chilled

---

[73] Tr. 2/49.

[74] Tr. 2/54.

[75] Tr. 2/49-50.

[76] Tr. 1/237.

[77] Tr. 2/47 (discussing R4, tab 10 at 448).

[78] Tr. 2/52-53.

[79] Tr. 2/57-58, 68.

[80] Tr. 1/203-04, 2/70.

[81] Tr. 2/62-63, 66, 90, 4/19; app. reply at 19.

water and the feeding hot water and the corridor," Ms. Meeks could not explain in any detail how JE Dunn mitigated 20 days of alleged delay.[82]

Ms. Meeks' relatively limited role in developing the delay analysis explains her limited understanding: she was not at the worksite during day-to-day operations, and did not, in her words, "get all the documents" related to the project.[83] Indeed, she did not gather the scheduling information for the fragnets herself—Mr. Hoeppner did that—rather, she entered that data into the computer scheduling software, Primavera 6.[84]

And Ms. Meeks did not exercise her own judgment in deciding what to make the subject of her delay analysis; rather, Mr. Hoeppner told her "to set up a Fragnet on the design issues that [JE Dunn was] having,"[85] and he (or other JE Dunn "team members") provided "[d]urations, overall procurement time frames, if there was (sic) any delays, issues that came up on site that [JE Dunn] needed to incorporate into the schedule that was (sic) affecting activities," including "estimates of how long certain activities would take."[86] Not surprisingly, then, when asked whether "issues regarding the sizing of humidifiers [were] on the critical path," Ms. Meeks answered, "I'm not the expert on this."[87]

Although Ms. Meeks claimed that she used her professional experience "to validate and ensure" that her delay analysis included all relevant information,[88] she conceded that her analysis does not represent the "whole," "full schedule."[89] Indeed, the analysis does not appear to consider that the government rejected some of the hydronic shop drawing submittals over concerns regarding, at least, insulation (including for hydronic piping), wye strainers, pipe extensions, and positive shutoff valves, even though those concerns began as early as April 17, 2020, when the government rejected JE Dunn's April 7, 2020 hydronic shop drawings. Consequently, Ms. Meeks apparently did not consider whether and to what extent issues regarding hydronic piping *insulation* delayed hydronic piping *installation*, and thus, following JE Dunn's logic, project completion.

---

[82] *See* tr. 2/92-94.
[83] Tr. 1/244-45.
[84] Tr. 1/70, 210.
[85] Tr. 2/12-13 (alteration added).
[86] Tr. 2/10.
[87] Tr. 2/22 (alteration added).
[88] *See* tr. 2/244-45.
[89] Tr. 2/60-61.

11

*Request for Equitable Adjustment:  The Rejection of Four Submittals*

On September 18, 2020, JE Dunn presented to the contracting officer a request for equitable adjustment (REA) requesting "$949,054 and an adjustment to the Period of Performance of 57 Days," "to address cost and schedule impacts arising out of the performance" of the task order, including the rejection of JE Dunn's April 7, 2020 hydronic shop drawings.[90]  Mr. Hoeppner was "mostly responsible for putting together" the REA.[91]  Attached to the REA is a "Scope Change Proposal Summary" that Mr. Hoeppner prepared for JE Dunn.[92]  The summary includes the statement that "[t]he schedule delay forced JE Dunn to consolidate the chiller pad construction which required the relocation of existing temporary chiller in order to mitigate further delay."[93]

In support of the REA, JE Dunn pointed to the government's rejection of only four of its hydronic shop drawing submittals as having delayed the project:[94]  (1) the April 17, 2020 rejection of Transmittal No. 23 64 26-5, regarding piping insulation for "strainers, control valves, and balancing valves greater than 1 inch";[95] (2) the May 13, 2020 rejection of Transmittal No. 23 64 26-5.1, regarding the perimeter heating system,  space heating, the safety factor, and insulation;[96] (3) the June 8, 2020 rejection of Transmittal No. 23 64 26-5.2, regarding insulation issues;[97] and (4) the June 16, 2020 rejection of Transmittal No. 23 64 26-5.3, regarding pipe extensions and valves.[98]  The REA specifically challenged the government's April 17, 2020, rejection of the April 7, 2020 submittal, alleging that the submittal should not have been rejected, because, the REA alleged, "[i]nsulation is not required to be a part of this specification section nor this submittal."[99]  The REA included Ms. Meeks' schedule update and fragnets,[100] explaining that:

> The attached Fragnet is based on baseline schedule with a
> data date of 01MAY20.  *Activity ID P1A-1120* was
> scheduled to start 05MAY20.  The activity did not start

[90] R4, tab 8 at 138.
[91] Tr. 1/144.
[92] R4, tabs 10 at 431, 8 at 141; tr. 1/145.
[93] R4, tab 10 at 431.
[94] R4, tab 10 at 430.
[95] R4, tab 8 at 199-200.
[96] R4, tab 8 at 211-12.  The perimeter heating system involves "existing baseboard
  finned tube heaters or overhead radiant ceiling panels."  R4, tab 10 at 678.
[97] R4, tab 8 at 234-35.
[98] R4, tab 8 at 265.
[99] R4, tab 8 at 138.
[100] R4, tab 8 at 145-64.

12

until 27JULY20. The Fragnet has a delay of 77 days. JE Dunn started hydronic piping prior to ASI approval, this mitigated the delay by 20 days and reduced this REA approximately $260,000.[101]

The ACO denied the REA on November 16, 2020, stating that:

> *The installation of the hydronic piping was not delayed due to rejection of submittals but was delayed due to an inadequate design on the part of JE Dunn. Specifically, your contract required the HVAC system to have a Winter Design Temperature of -30 degrees F [].* In addition, your *contract required the HVAC system to be designed with a 15% safety factor [].* Contract submittals could not be approved until the Government received an acceptable design on which to review the submittals. You submitted an acceptable design by way of ASI-003 on 14 July 2020, which was reviewed and subsequently approved on 31 July 2020.[102]

JE Dunn says that the ACO's statement is "an admission that rejecting the hydronic piping submittals is Government-caused critical path delay."[103] Although we find that the ACO's statement admits that the government delayed hydronic piping installation because JE Dunn's boiler and humidifier designs did not comply with the 15% safety factor and negative 30 degree Fahrenheit requirements, respectively, we do not find that the ACO with that statement admitted government delay to the critical path.

*Claim to the Contracting Officer: Humidifiers, Boilers, and Hydronic Piping*

On July 19, 2021, JE Dunn presented to the contracting officer a claim demanding $949,054 and a "time extension of 57 compensable calendar days."[104] JE Dunn asserted three bases for the claim: (1) the government changed the contract by requiring that humidifiers meet the negative 30 degree winter design temperature requirement; (2) the government changed the contract by requiring that JE Dunn "upsize" the boilers to meet the government's interpretation of the contract's 15% safety factor requirement; and (3) "[the government's] process of altering JE Dunn's completed/compliant design after the end of the design period caused JE Dunn to incur additional costs and delayed the project by 57 calendar days, all of which are

---

[101] R4, tab 8 at 139 (emphasis added).
[102] R4, tab 10 at 712 (emphasis added).
[103] App. br. at 9.
[104] R4, tab 10 at 423.

attributable to the [g]overnment."[105]  The contracting officer denied the claim on October 31, 2021.[106]  On January 27, 2022, JE Dunn timely appealed the claim denial to the Board, thus jurisdiction is proper pursuant to the Contract Disputes Act, 41 U.S.C. § 7104(a).

*Pre-Hearing Brief:  The Four Submittals Revisited*

In its February 17, 2023 pre-hearing brief, JE Dunn repeated the delay allegations in its REA; that is, JE Dunn asserted that its "attempt to proceed with the installation of hydronic piping was delayed by [the government's] improper attempt to re-design the Project by rejecting hydronic piping submittals and debating the already approved design for that piping."[107]  JE Dunn specifically highlighted the government's rejection of the same four submittals that JE Dunn had pointed to in its REA; namely the April 17, May 13, June 8, and June 16, 2020 submittals (Transmittal Nos. 23 64 26-5 through 26-5.3),[108] connecting the government's rejections of those submittals to the alleged delay in hydronic piping installation, and expressly noting that the government rejected those submittals because of government concerns over insulation, valves, and the perimeter heating system.[109]  JE Dunn pointed specifically to the boiler-humidifier-hydronic piping issue, saying that:

> Even if [the government] is correct about the directed
> changes to the Project's humidifiers and boilers (which
> JE Dunn disputes), [the government] is still responsible for
> the full amount of delay at issue.  The delay in question
> resulted from [the government's] rejection of submittals
> for hydronic piping.[110]

Moreover, JE Dunn identified the delay period as "May 5, 2020 to July 27, 2020 – a total of 77 calendar days"[111]—even though that is a period of 84 days—and identified the specific delayed activity as Activity P1A-1120 (Fin Tube Heater Install), which, JE Dunn said, "was scheduled to start May 5, 2020 but did not start until July 27, 2020."[112]

---

[105] *See* R4, tab 10 at 423-45 (alterations added).

[106] R4, tab 11 at 741.

[107] App. pre-hearing br. at 7.

[108] R4, tab 8 at 199-200, 211-12, 234-35, 265-66.

[109] App. pre-hearing br. at 7.

[110] App. pre-hearing br. at 20 (alterations added).

[111] App. pre-hearing br. at 3.

[112] App. pre-hearing br. at 9.

*Opening Statement:  Boilers, Humidifiers, and Hydronic Piping*

In his opening statement on February 28, 2023, the first day of the hearing, JE Dunn's counsel identified for the Board's consideration the following three issues of alleged delay:  (1) "the rejection of hydronic piping submittals"; (2) the humidifier design; and (3) the boiler design.[113]  Counsel explained that the government "doesn't allow the hydronic piping, which is on the critical path, to begin for ultimately 57 days."[114]  Counsel did not explain the difference between the 57-day delay that he identified during his opening statement, and the 77-day delay period identified in JE Dunn's claim to the contracting officer.  Nor did he assert that the delay period at issue began on May 5, 2020, and ended on July 27, 2020.  Indeed, counsel did not identify the start- and end-dates of the 57-day period during which the government allegedly did not let hydronic piping installation begin.

*Post-Hearing Jurisdictional Brief:  "Three Key Submittals"*

In a post-hearing jurisdictional brief filed on April 24, 2023,[115] JE Dunn identified what it says is the rejection of "three key submittals," which allegedly delayed the project; namely, (1) the February 25, 2020 boiler submittal (Transmittal No. 23 52 00-3) rejected by the government on March 10, 2020;[116] (2) the March 13, 2020 humidifier submittal (Transmittal No. 23 81 00-1) rejected by the government on March 30, 2020;[117] and (3) the April 7, 2020 hydronic shop drawings submittal (Transmittal No. 23 64 26-5) rejected by the government on April 17, 2020.[118]  Only one of those references, that to the April 7, 2020 hydronic shop drawings submittal rejected by the government on April 17, 2020, appeared in JE Dunn's pre-hearing brief.[119]  In its jurisdictional brief, JE Dunn stated that the government "disapproved JE Dunn's hydronic piping submittals based on the unfounded notion that hydronic piping was intertwined with other Project systems – namely humidifiers and boilers."[120]

---

[113] Tr. 1/13-14.

[114] Tr. 1/13-14.

[115] Although the four-day hearing of the appeal ended on March 3, 2023, JE Dunn describes its April 24, 2023 jurisdictional brief as a pre-hearing brief.  App. post-hearing jur. br. at 1.

[116] App. post-hearing jur. br. at 5; app. supp. R4, tab 32 at 2868-69.

[117] App. post-hearing jur. br. at 5; app. supp. R4, tab 35 at 3210-11.

[118] App. post-hearing jur. br. at 5; app. supp. R4, tab 37 at 3534-35.

[119] App. post-hearing jur. br. at 7.

[120] App. post-hearing jur. br. at 5-6.

*Initial Post-Hearing Brief on the Merits: "Three Key Submittals"*

In its March 1, 2024 initial post-hearing brief, JE Dunn, repeating its "three key submittals" theme, again requested a 57-day compensable time extension,[121] saying that "[t]he improper rejection of submittals resulted in a day-for-day delay to the Project"; namely, the same three submittals identified in its April 2023 post-hearing jurisdictional brief: (1) the February 25, 2020 boiler submittal rejected on March 10, 2020; (2) the March 13, 2020 humidifier submittal rejected on March 30, 2020; and (3) the April 7, 2020 hydronic shop drawings submittal (what JE Dunn calls a "hydronic piping" submittal) rejected on April 17, 2020.[122] JE Dunn restated that "[the government] rejected all JE Dunn construction submittals (for boiler and humidifier equipment and hydronic piping) because of an ill-conceived perceived relationship between the hydronic piping design and other erroneous [government] design concerns":

> [D]ue to the Government's erroneous decision to re-design the humidifiers and boilers during the construction phase . . . , [the government] also rejected JE Dunn's hydronic piping submittals and would not allow JE Dunn to proceed with Project Phase 1A construction.[123]

JE Dunn elaborated:

> The evidence at the hearing therefore showed that [the government] improperly bundled and intertwined its purported concerns over certain design elements (namely, humidifiers and boilers) to the point where it stopped all critical path constriction activities in Phase 1A (hydronic piping). [The government] disapproved JE Dunn's hydronic piping submittals (and would not allow JE Dunn to proceed with Project Phase 1A construction) *because of a purported design issues* (sic) *related to the humidifiers and boilers* that [the government] years later admitted were unrelated to the hydronic piping design/submittals.[124]

---

[121] App. br. at 50-51, 56,

[122] App. br. at 21; gov't br. at 51; R4, tab 32 at 2868-69; Apr. 24, 2023 pre-hearing br. at 5; app. supp. R4, tabs 35 at 3210-11, 37 at 3534-35.

[123] App. br. at 22 (alterations added; footnotes omitted).

[124] App. br. at 24 (alterations and emphasis added; footnote omitted).

JE Dunn also referenced fin tube installation and other activities, pointing to its May 20, 2020 letter to the government in which JE Dunn complained of delay to the project and alleged that:

> We are unable to proceed with construction as scheduled due to rejection of the following submittals due to the ongoing perimeter heating discussion:  Phase 1A Tab Schematic Drawings and Report, Phase 1A Hydronic Shop Drawings, Hydronic Pumps, Fin Tube Radiation Equipment.
>
> Rejection of these submittals is not allowing our team to proceed with a Phase 1A preparatory meeting, which is holding up critical path construction activities such [as] Phase 1A hydronic piping and ductwork replacement. Submittals are being rejected despite being in accordance with Issued For Construction design documents.  As shown on the submitted Recovery Schedule dated 29 April 2020, Phase 1A Schedule ID P1A-1120 was supposed to start on 01 May 2020.  To-date, this activity and other related activities have not started due to delays in the submittal approval process.[125]

*Reply Brief*

In its post-hearing reply brief, JE Dunn stayed with the theory set forth in its initial post-hearing brief, including the references to the fin tube activity (as well as its alleged, planned, early May 2020 start date) and other activities.  In its brief, JE Dunn repeated the contention that:

> [The government] unreasonably and improperly shut down all progress on the Project by refusing to approve any construction submittals *until JE Dunn revised the humidifier and boiler designs*.  In doing so, [the government] refused to allow JE Dunn to proceed with the installation of hydronic piping – even though there is no reasonable relationship between the hydronic pipe design and the other design changes directed by [the government].[126]

---

[125] App. br. at 23 (emphasis in original; alteration added; footnote omitted).
[126] App. reply br. at 1 (emphasis added).

17

JE Dunn also quoted the same May 20, 2020 "[w]e are unable to proceed with construction as scheduled" statement (set forth above) that also appears in its March 1, 2024 initial post-hearing brief.[127]

DECISION

To begin, JE Dunn complains that the government initially approved its design before questioning "certain elements of [that] design."[128] The contract provides that "[t]he Contractor shall, without additional compensation, correct or revise any errors or deficiency in its designs, drawings, specifications, and other non-construction services and perform any necessary rework or modifications," and that "[n]either the Government's review, approval or acceptance of, nor payment for, the services required under this contact, shall be construed to operate as a waiver of any rights under this contract."[129] Consequently, the government's initial approval of the design did not relieve JE Dunn of its obligation to provide a design that complied with the contract.

*Boilers*

JE Dunn says that the government directed a contract change by requiring it to redesign the boiler system to include a 15% safety factor; JE Dunn essentially says that the government erroneously interpreted the boiler system as undersized as originally designed, and directed that the boiler system be upsized.[130] Although the task order provides that "[p]er UFC 03-410-01, all heating equipment and distribution sizing shall be designed with a 15% safety factor," UFC 3-410-01 allows for "no more than" a 15% safety factor. The parties say that there is no ambiguity on this issue,[131] with the government saying that the 15% safety factor requirement is consistent with the UFC because in allowing for what the government characterizes as "up to" a 15% safety factor (even though UFC 3-4.1 does not use the term "up to," but the phrase "no more than"), the UFC allows for the 15% safety factor required by the contract.[132] The government says further that if there is any ambiguity, it is patent, while JE Dunn hints that any ambiguity is latent.[133] We conclude that (1) the task order requires a 15% safety factor, (2) the 15% safety factor requirement is not inconsistent with UFC 3-410-01, and (3) any ambiguity on this issue is patent, requiring JE Dunn to have inquired into such ambiguity prior to contract award.

---

[127] App. reply br. at 9 (alterations added; footnotes omitted).
[128] App. br. at 1-2, 5.
[129] R4, tab 1 at 37
[130] *See* app. br. at 2-3; *see* app. br. at 50 & n.149.
[131] App. br. at 44; *see* gov't br. at 29.
[132] Gov't br. at 29.
[133] Gov't br. at 29; app. br. at 44.

*Korte Constr. Co.*, ASBCA No. 63148, 23-1 BCA ¶ 38,454 at 186,908. JE Dunn does not point to evidence of any such pre-award inquiry.

JE Dunn also says that the government "directed changes that resulted in a 22% safety factor – far in excess of the [Request for Proposals (RFP)]/UFC requirement."[134] We understand JE Dunn to mean that in complying with the requirement to provide a 15% safety factor, it exceeded that requirement. JE Dunn fails to demonstrate that the government is responsible for JE Dunn providing more than the 15% safety factor the contract requires. JE Dunn points to the ACO's June 17, 2020 letter,[135] but we see no direction in that letter to provide *more than* a 15% safety factor, much less a 22% safety factor. And although JE Dunn also points to the testimony of the government's engineer, who, JE Dunn says, "directed a 22% safety factor,"[136] we see no such direction reflected in that testimony,[137] nor does JE Dunn address whether the engineer (as opposed to a contracting officer) possessed the authority to direct a change to the contract. *See BGT Holdings LLC v. United States*, 984 F.3d 1003, 1012-13 (Fed. Cir. 2020). For all these reasons, JE Dunn fails to demonstrate that government directed a contract change with respect to boilers, and JE Dunn's request for compensation for this issue is denied.

*Humidifiers*

JE Dunn says that the government directed a contract change by requiring it to redesign the humidifier system to meet a negative 30 degree Fahrenheit winter design temperature.[138] As with the boiler issues, JE Dunn essentially says that the government erroneously interpreted the humidifier system as undersized as originally designed, and directed that the humidifier system be upsized.[139] However, the task order provides that "Winter design temperature has been required to be -30 F," which we interpret as a requirement that HVAC components, including humidifiers, be designed to meet a negative 30 degree Fahrenheit winter design temperature. Although JE Dunn contends that the negative 30 degree Fahrenheit winter design temperature does not apply to humidifiers, it cannot identify any provision in the contract that provides for such an exception. Instead, JE Dunn derives a different result from various UFC provisions (none of which directly contradicts the contract requirement) and "good engineering practice."[140] However, when the government directed JE Dunn to meet the negative 30 degree Fahrenheit winter design temperature

---

[134] App. br. at 16 ¶ 40 (alteration added); *see* app. reply at 28.
[135] App. br. at 16 ¶ 40 n.60.
[136] App. br. at 47-49; app. reply at 28 n.71.
[137] Tr. 4/55-56.
[138] App. br. at 2-3; *see* app. br. at 50 n.149.
[139] *See* app. br. at 2-3.
[140] App. br. at 36.

to humidifiers, JE Dunn complied, demonstrating that the negative 30 degree Fahrenheit winter design temperature *can, as an engineering matter, be applied to humidifiers*, as even JE Dunn's design team evidently understood. For these reasons, the government did not direct a contract change with respect to humidifiers, and JE Dunn's request to recover for this issue is denied.

*Delay to Hydronic Piping Installation: "Three Key Submittals"*

JE Dunn says that "[the government's] actions delayed the planned start date for hydronic piping from May 5, 2020 to July 27, 2020 – a total of 77 calendar days,"[141] elaborating that "[a]ctivity P1A-1120 (Fin Tube Heater Install) was scheduled to start May 5, 2020 but did not start until July 27, 2020."[142] Of those 77 days, JE Dunn claims compensation for 57 (that is, $636,798.88), having mitigated, JE Dunn says, 20 days of the government's delay.[143] JE Dunn says that "based on the incorrect perception that the hydronic piping design/submittal was intertwined with [the government's] humidifiers and boiler redesign – [the government] rejected JE Dunn's hydronic piping submittals and refused to allow the Project to proceed," and that "[t]he improper rejection of submittals resulted in a day-for-day delay to the Project because of inability to start critical path construction activities."[144]

JE Dunn further says, as noted above, that "there are three key submittals at issue in this Appeal"; namely: (1) the February 25, 2020 boiler submittal rejected by the government on March 10, 2020; (2) the March 13, 2020 humidifier submittal rejected on March 30, 2020; and (3) the April 7, 2020 hydronic shop drawings submittal rejected on April 17, 2020.[145] Although JE Dunn referenced the government having rejected more than one hydronic piping submittal, the only specific "hydronic piping" submittal among the "three key submittals" that JE Dunn specifically identified is the April 7, 2020 hydronic shop drawings submittal that the government rejected on April 17, 2020, for reasons having to do with insulation; that rejection does not mention boilers or humidifiers, much less the 15% safety factor or the negative 30 degree Fahrenheit winter design temperature.[146]

---

[141] App. pre-hearing br. at 3 (alteration added).

[142] App. pre-hearing br. at 9.

[143] App. br. at 28.

[144] App. br. at 21.

[145] App. br. at 21; app. supp. R4, tab 32 at 2868-69; Apr. 24, 2023 jurisdictional brief at 5; app. supp. R4, tab 35 at 3210-11; app. supp. R4, tab 37 at 3534-35.

[146] App. br. at 21; app. supp. R4, tab 37 at 3534-35. We determine that JE Dunn has waived any issue regarding the government's rejection of any submittal other than the "three key submittals" expressly identified in JE Dunn's post-hearing briefing. *See Bannum, Inc. v. United States*, 779 F.3d 1376, 1382 (Fed. Cir. 2015).

For JE Dunn to recover for a compensable delay, it "must prove that the government was the sole cause of the delay and that the appellant did not contribute to or concurrently cause such delay." *ECCI*, ASBCA No. 59586, slip op. at 14. Additionally, JE Dunn must show that the government's actions affected activities on the critical path of JE Dunn's performance of the contract. *Id.* And to be credible, a contractor's delay analysis must take into account, and give appropriate credit for, all of the delays that were alleged to have occurred. *See id.* (citing cases). We determine that JE Dunn has not met that burden.

First, despite the Fort Drum HVAC project having been completed, JE Dunn's delay analysis is hypothetical, based upon assumptions of future events, rather than a retrospective analysis of actual, past events. In circumstances such as this, where the work at issue has been completed, we expect that a contractor claiming delay damages will provide a retrospective time impact analysis, with start and finish dates and durations of actual delayed activities. *See generally, John T. Jones Constr. Co.*, ASBCA Nos. 48303, 48593 98-2 BCA ¶ 29,892 at 147,975 (discussing cases); *see Galaxy Builders, Inc.*, ASBCA Nos. 50018, 50136, 00-2 BCA ¶ 31,040 at 153,283. JE Dunn points out that the contract provides for a prospective analysis,[147] but the cited provisions apply to a contractor's request that a contracting officer provide a time extension; those provisions do not govern the Board's consideration of a request that the Board find that a contactor was delayed.

Second, JE Dunn's "three key submittals" delay theory does not withstand scrutiny. The first such submittal, Transmittal No. 23 52 00-3, the boiler submittal, was rejected not because of the 15% safety factor or the negative 30 degree winter temperature, but because of other issues that JE Dunn does not address, such as "capacities, connection sizes, fuel requirements, electrical requirements, water/flow requirements," and "new (not reused) electrical infrastructure components."[148] The second, Transmittal No. 23 81 00-1, the humidifier submittal, was rejected not only because of the negative 30 degree winter design temperature, but also because of the designed "outside air flow rate,"[149] a potential delay issue that JE Dunn also does not address. The third, Transmittal No. 23 64 26-5, the hydronic piping shop drawings submittal, was rejected in part because of insulation issues that, again, JE Dunn does not address. In short, given that issues other than boilers and humidifiers were among the motivations for the rejection of the "three key submittals," JE Dunn does not adequately explain how the government's rejection of those three allegedly "key" submittals delayed the project by 77 days, much less during the period May 5 through July 27, 2020. *Cf. ECCI,* ASBCA No. 59586, slip op. at 20-21 (rejecting

---

[147] App. reply at 14-15 (discussing Unified Facilities Guide Specifications (UFGS) §§ 3.8 & 3.8.2).

[148] App. supp. R4, tab 32 at 2868; *see* gov't br. at 31.

[149] App. supp. R4, tab 35 at 3210-11.

21

contractor's delay opinion that ignored potential delay issue that contractor had previously and unsuccessfully relied upon). Indeed, only one of those submittals, the humidifier submittal, was rejected, even in part, because of an issue that JE Dunn has settled upon as one of the subjects of this appeal; namely, the negative 30 degree winter design temperature.

Third, JE Dunn muddles its own May 5 to July 27, 2020 alleged delay period (which is 84 days long; not 77 days) by insisting that the delay period ended no later than June 19, 2020, when mold overtook the critical path.[150] Perhaps JE Dunn takes this approach to avoid, as the government suggests, a potential issue of concurrent delay involving mold remediation for which JE Dunn may have received compensation by way of an alleged bilateral contract modification and release that (judging at least by neither party's providing a record citation for it) does not appear among the documents in evidence.[151] In any event, it cannot be the case that the government delayed hydronic piping installation both through July 27, 2020, and no later than June 19, 2020. Even JE Dunn's counsel appeared confused about the time

---

[150] *See* app. br. at 55; app. reply at 17. In another such example of such confusion, JE Dunn says, without specifying any dates, that "[e]ven after allowing hydronic piping activities to proceed, [the government] continued to improperly re-design the Project during the construction phase in violation of the express terms of the Task Order." App. br. at 2. And later, JE Dunn says, "[e]ven after ending the critical path delay by releasing JE Dunn to begin construction on Phase 1A hydronic piping, [the government] nevertheless continued the improper practice of re-designing after award . . . [o]n March 30, 2020, [the government] rejected JE Dunn's submittal for the humidifier equipment based on the IFC design[;] [t]he specific basis for the decision to reject the construction submittal was the purported need to design based on the -30 Degree (F) winter design temperature." App. br. at 13-14 ¶¶ 20, 28 (alteration added). Still later, JE Dunn says that "*[e]ven after ending the critical path delay* by releasing JE Dunn to begin construction on Phase 1A hydronic piping, [the government] nevertheless continued the improper practice of re-designing after award. [The government] directed changes to the Project's humidifiers and boilers . . . ." App. br. at 32 (emphasis and alterations added). The precise dates that would flesh out those timelines JE Dunn never provides, although we note again that the government rejected two of JE Dunn's "three key submittals"—the boiler and humidifier submittals—in March 2020, before rejecting the third "key submittal"—the hydronic shop drawings submittal—in April 2020; therefore *after*, not before, the alleged contract changes to boilers and humidifiers that, under JE Dunn's delay theory, motivated the government's halting of hydronic piping installation. App. supp. R4, tabs 32 at 2868, 35 at 3210, 37 at 3534.

[151] Gov't br. at 49-51; reply at 18-20; *see* tr. 4/16-18.

component of JE Dunn's delay theory, having represented during his opening statement that the government did not "allow the hydronic piping . . . to begin for ultimately 57 days,"[152] leaving out JE Dunn's position that the alleged government delay totaled 77 days, with JE Dunn's alleged mitigation efforts—which efforts the government allegedly allowed—allegedly reducing that period to 57 days.

In addition, JE Dunn relegates to a footnote, and does not address, substantively or expressly, a July 6, 2020 letter in which the ACO tells JE Dunn that hydronic piping installation could proceed.[153]  And JE Dunn does not address the government's July 10, 2020, approval of the hydronic shop drawings.[154]  Nor does JE Dunn explain how rejections of boiler, humidifier, and hydronic shop drawing submittals in April and March, 2020, delayed fin tube heater installation, much less any other work, hydronic piping-related or not, through July 27, 2020, particularly given that the government rejected JE Dunn's "fin tube radiation equipment" submittal also in March 2020, ostensibly not because of boiler-humidifier-hydronic piping issues, but including because the submittal did not include units for the lobby or Room 1300.[155] It is not up to the Board to connect such dots, or otherwise do a party's work for it. *See Wright Bros., the Bldg. Co., Eagle LLC*, ASBCA No. 62285, 23-1 BCA ¶ 38,255 at 185,779; *SKE Base Servs. GmbH*, ASBCA No. 60101, 18-1 BCA ¶ 37,159 at 180,903.

Moreover, JE Dunn's latest, "three key submittals" delay theory ignores potential delay events that populated the earlier iterations of its delay case.  In its May 20, 2020 letter to the government, in its REA, and as late as its pre-hearing brief, JE Dunn identified submittal rejections concerning hydronic pumps, fin tube installation, valve size, insulation, and the perimeter heating system as examples of government-caused delays to the project.[156]  JE Dunn accounts for none of those in its "three key submittals" delay case.  Indeed, only one of the submittal rejections listed in the REA and pre-hearing brief is referenced in JE Dunn's post-hearing briefing:  the April 17, 2020 rejection of the April 7, 2020 submittal.[157]  Despite that reference, JE Dunn's post-hearing briefing does not address the reason for that April 17 rejection: concerns regarding piping insulation, an issue that also motivated the government's rejection of JE Dunn's May and June 2020 hydronic shop drawing submittals.  Rather, in its post-hearing brief, JE Dunn makes clear, without any explanation for the change

---

[152] Tr. 1/14.

[153] App. supp. R4, tab 44; gov't br. at 4.  The government's post-hearing brief does not reference its July 6, 2020 letter.

[154] R4, tab 8 at 284.

[155] App. supp. R4, tab 34 at 3159-60.

[156] App. pre-hearing br. at 7; R4, tab 10 at 428-29.

[157] App. br. at 21.

in course, that its theory of the delay case is now confined to the boiler and humidifier upsizing issue:

> [B]ased on the incorrect perception that the hydronic piping design/submittal was intertwined with [the government's] humidifiers and boiler redesign [the government] rejected JE Dunn's hydronic piping submittals and refused to allow the Project to proceed.[158]

Based upon that statement, one might think that JE Dunn would say that the alleged project delay started on May 13, 2020, when the government rejected the hydronic shop drawings because of issues that included not only the safety factor, but the perimeter heating system, space heating, and insulation.[159] Indeed, during the hearing, particularly during the examination of Mr. Hoeppner, JE Dunn focused on the government's May 13, 2020 rejection of the hydronic shop drawing submittal, and the government's July 6, 2020 suspension of the hold on hydronic piping installation.[160] But JE Dunn never even mentions the May 13, 2020 date in post-hearing briefing. Nor does JE Dunn, in post-hearing briefing, explain the connection or relationship, if any, between fin tube radiation equipment installation and hydronic piping installation.

Finally, Ms. Meeks, the scheduler ostensibly responsible for, and the sponsor of, JE Dunn's delay analysis, was not a persuasive witness. She appeared uninformed and confused about the details of JE Dunn's delay theory. She was unfamiliar with the boiler-humidifier-hydronic piping issue, a connection that (at least since the hearing of the appeal) is the crux of JE Dunn's delay case. She offered her own delay period—May 4 through August 4, 2020—without substantiating it, and was apparently unaware that JE Dunn had just recently represented to the Board that May 5 through July 27, 2020, was the period at issue. She could not explain how JE Dunn mitigated its delay. She did not gather and examine the project documents, visit the project site, or choose which activities to make the subject of her delay analysis. Indeed, she did not analyze whether and to what extent JE Dunn was delayed, so much as she entered into Primavera 6 the data that Mr. Hoeppner gave her.

For all these reasons, we determine that JE Dunn's delay analysis is unpersuasive. Consequently, that delay analysis is rejected.

---

[158] App. br. at 21 (alterations added).
[159] R4, tab 8 at 211-12.
[160] Tr. 1/78-80, 85-86, 90-93.

*Government Admissions*

JE Dunn points to what it says are government admissions that support its delay case. As referenced above, JE Dunn points to the November 16, 2020 letter of the ACO to JE Dunn, containing the following statement:

> The installation of the hydronic piping was not delayed due to rejection of submittals but was delayed due to an inadequate design on the part of JE Dunn. Specifically, your contract required the HVAC system to have a Winter Design Temperature of -30 degrees F []. In addition, your contract required the HVAC system to be designed with a 15% safety factor []. Contract submittals could not be approved until the Government received an acceptable design on which to review the submittals. You submitted an acceptable design by way of ASI-003 on 14 July 2020, which was reviewed and subsequently approved on 31 July 2020.[161]

As determined above, we agree with JE Dunn that in that statement the government admits that it delayed hydronic piping installation because of boiler and humidifier design issues. *See generally*, *ECCI*, ASBCA No. 59586, slip op. at 22 (citing cases involving admissions).

JE Dunn also says that the government has admitted that hydronic piping installation was on the critical path.[162] We agree: citing Mr. Price, the government says that "numerous critical path activities, *including the installation of hydronic piping* (P1A 4390) and demolition of VAV and ductwork (P1A 1052) were listed on the Guthrie Clinic schedules and *ran concurrently as critical tasks*."[163]

JE Dunn also says that, in a post-hearing motion to dismiss this appeal for lack of jurisdiction on sum-certain grounds, the government admitted that design issues regarding boilers and humidifiers had no bearing on whether installation of hydronic piping could proceed.[164] We agree. In its April 26, 2024 post-hearing brief, the government stated that:

> [I]t is not accurate to say that the hydronic piping issue *was separate* from the erroneous designs JE Dunn submitted.

---

[161] App. br. at 9 n.21 (citing R4, tab 10 at 712) (alteration added).
[162] *See* app. br. at 6 n.14 (citing tr. 4/39-40).
[163] Gov't br. at 44. (citing tr. 2/58) (emphasis added).
[164] App. reply at 7.

25

> In this regard, the boilers and the hydronic piping were part of the overall HVAC system. Hence, the Government was reasonable in requiring JE Dunn to demonstrate the capacity of its hydronic piping before [the government] allowed JE Dunn to proceed with construction on the mere hope that they were not undersized like the humidifiers and boilers.[165]

However, nearly a year earlier, in its May 24, 2023 motion to dismiss the appeal for lack of jurisdiction on sum-certain grounds, and relying upon hearing testimony elicited by JE Dunn to the effect that hydronic piping was unrelated to boiler and humidifier issues, such that JE Dunn should have been able to proceed with hydronic piping installation despite those issues, the government said the following:

> The HVAC system in this case had *three separate components*, a point that JE Dunn admitted in testimony at the hearing. These are the (1) humidifier, (2) hot water boilers, and (3) hydronic piping. *See* Transcript Vol. 1 at 61 ("[W]e were asking to proceed with the hydronic piping saying that it was unrelated to the other supposed issues regarding the boilers and especially the humidifiers, and that we should really be able to go proceed with the hydronic piping work."). *See also* Transcript Vol. 2 at 139-140 (JE Dunn's designer of record, Mr. Maniktala, testifying that "I don't know that this is related…the piping system is *independent*" of the boilers).
>
> *Although these systems are separate*, JE Dunn presented only one sum, $949,054, and 57 days of delay, without attributing that amount to each sub-claim. R.4 at 423 (Tab 10)[166]
>
> . . .
>
> Specifically, Mr. Maniktala said that "I don't know that this is related…the piping system is independent" of the boilers. JE Dunn acknowledged this in its Jurisdictional Brief when it noted that Mr. Maniktala "testified that the hydronic piping system is independent of the humidifier

---

[165] Gov't br. at 37. (emphasis added) (alteration added).
[166] May 24, 2023 mot. at 4 ¶¶ 7-8, 18 n.4 (emphasis added). We denied the motion. *JE Dunn Constr. Co.*, ASBCA No. 63183, 2023 WL 9054358 (Dec. 13, 2023).

and boiler equipment—*meaning that any perceived design issues with that equipment should have no bearing on* [the government's] *decision to approve hydronic piping submittals and allow JE Dunn to proceed with construction activities*."[167]

Although the government insisted in its motion to dismiss that "different facts underlie the hydronic piping delay, including whether any delay to the project was caused by the hydronic piping, and whether the government was reasonable," the government said that it "agrees with JE Dunn's witnesses at the hearing that these three issues are separate and distinct." [168]  We find that in its motion to dismiss the appeal, the government admitted that the boiler, humidifier, and hydronic piping installation were separate and distinct issues, such that any perceived design issues with boilers and humidifiers should have had no bearing upon whether JE Dunn should have been allowed to proceed with hydronic piping installation.

Consequently, in view of the government statements reviewed above, we determine that the government delayed hydronic piping installation, a critical path activity, by linking hydronic piping installation to boiler and humidifier issues, even though those components were separate and independent from hydronic piping installation, and that JE Dunn should have been allowed to proceed with hydronic piping installation despite those boiler and humidifier issues.  However, what JE Dunn still does not establish, even with the help of those admissions, is the period during which the government delayed hydronic piping installation while that activity was on the critical path.  JE Dunn needs to have established the start- and end-dates of such critical-path delay, which it has failed to do.  Citing the government's July 6, 2020 letter telling JE Dunn that "JE Dunn will be allowed to proceed" with the installation of hydronic piping, JE Dunn says:

> Approximately three months after first rejecting the Phase 1A hydronic piping submittal, [the government] withdrew the basis for rejecting the hydronic piping submittals without making any changes to the Project's hydronic piping design as a result of [the government's] purported concerns and issues with the Project's humidifiers and boilers.[169]

Approximately three months (90 days) before July 6, 2020, is April 7, 2020, which is within range of the government's April 17, 2020 rejection of JE Dunn's April 7, 2020

---

[167] *Id.* at 9 (emphasis and alterations added).
[168] *Id.* at 10-11.
[169] App. br. at 12 ¶ 15 & n.37 (alteration added).

hydronic shop drawings for reasons not having to do with boilers and humidifiers.[170] But JE Dunn does not resolve the discrepancy between such a timeline and the "May 5, 2020 to July 27, 2020" timeline that it offers elsewhere.[171]

JE Dunn attempts to establish at least the end-date of critical path delay by pointing to Mr. Price's testimony, and we agree that Mr. Price testified that mold overtook the critical path on June 19, 2020, but we disagree that Mr. Price admitted that hydronic piping installation was on the critical path prior to that date, or when it came on the critical path: the cross-examination of Mr. Price did not accomplish that task.[172] Even if it did, JE Dunn does not say that Mr. Price admitted to any particular start- or end-dates for the critical path delay of hydronic piping installation. To put it gently, JE Dunn exaggerates what Mr. Price agreed with: JE Dunn represents Mr. Price as having acknowledged that "hydronic piping activities was (sic) the critical path prior to [June 19, 2020] (i.e., approximately March through May 2020),"[173] but Mr. Price neither made nor agreed to any statement as definitive as that. (Indeed, Mr. Price posited that hydronic piping installation *started* in May 2020.)[174] Even if he had, "approximately March through May 2020" is not sufficiently definitive, nor does JE Dunn attempt to support even that approximate period with reference to record evidence.

Along the same lines, in a footnote, JE Dunn points to other testimony of Mr. Price, apparently for the purpose of establishing that the government has admitted that "a 'fair and reasonable' analysis of the Project schedule shows a 77-calendar day delay."[175] Regarding one of the fragnets prepared by Ms. Meeks, Mr. Price testified:

> When looking at this schedule, it is a -- only the critical path is shown in this particular schedule as can be seen because you don't see any other activities with any positive slope when we go down the whole list here. And if we get to the end of this, this type of schedule is typically reviewed during the timeframe of the impact. So it should have been reviewed and agreed to -- the forward looking analysis that should have been agreed to during the May or June timeframe *if we would have accepted this type of schedule*. And as you can see at the bottom here, it shows -77 days. So *if this analysis of this schedule was fair and*

---

[170] App. supp. R4, tab 37 at 3534-35
[171] App. pre-hearing br. at 3.
[172] App. br. at 53; tr. 4/39-40.
[173] App. br. at 55.
[174] Tr. 4/14.
[175] App. br. at 6 n.14 (citing tr. 4/12-13, 40); tr. 4/9-13.

*reasonable*, then the impact should have been 77 days based on this analysis.[176]

We are not persuaded. First, we do not view that qualified and ambiguous statement as an admission or otherwise demonstrating that the government owes JE Dunn 77 (or even only 57) days of compensable delay, even taking into account, as JE Dunn points out,[177] that Mr. Price further agreed that the 20 days of "mitigated delay" could "resolve the discrepancy" between the 77 days identified in the fragnet and the 57 days claimed by JE Dunn. [178] Second, Mr. Price was critical of Ms. Meeks' analysis, as evidenced by his qualification "if we would have accepted this type of schedule."[179] We take that as a reference to JE Dunn having presented the schedule in the form of a PDF; Mr. Price characterized that PDF as unacceptable, because, in his opinion, at least, "PDFs are not in a scheduling world acceptable because they can be manipulated."[180] Confirming his (at a minimum) skepticism regarding JE Dunn's PDF, Mr. Price further testified:

> So on this particular schedule, like I was referring to in the beginning, why we don't accept PDFs, because it only shows the data that they're necessarily wanting to show at the moment.[181]

In any event, JE Dunn does not address Mr. Price's criticism of Ms. Meeks' having presented her delay analysis by way of a PDF.

For all these reasons, JE Dunn fails to demonstrate that it is entitled to recover for government-caused delay.

---

[176] Tr. 4/12-13; Tr. 4/41 (emphasis added).
[177] App. reply at 12.
[178] Tr. 4/41.
[179] Tr. 4/12.
[180] Tr. 4/11.
[181] Tr. 4/13. S*ee Data Mktg.*, 55 Fed. Cl. at 693 (regarding PDF format and manipulation).

CONCLUSION

We have considered the parties' other arguments, and find them unnecessary to address. The appeal is denied. Accordingly, the government's February 7, 2023 motion for summary judgment, which we deferred, is denied as moot.

Dated: August 1, 2025

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63183, Appeal of JE Dunn Construction Company, rendered in conformance with the Board's Charter.

Dated: August 1, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

30